**Donald J. GRAVES, Graves Auto Salvage, Inc., Rose Marie Graves, Graves Body Crusher, Inc., Becky Sue Hoover, Plaintiffs,**

v.

**KEMSCO GROUP, INC., Markle Manufacturing Co., H. Kent Murphy, Marvin Bradburn and Car–Go Corporation, Defendants.**

Civ. No. F 80–190.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Jan. 12, 1988.

See also 676 F.Supp. 1411.

Roland W. Gariepy, Fort Wayne, Ind., for plaintiffs.

David A. Lundy, Lundy and Associates, Fort Wayne, Ind., for defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

This case has acquired an extensive history which for immediate purposes, can be summarized in this court's order of July 17, 1987, 676 F.Supp. 1411.

Further proceedings were held in open court on September 8, 1987. Evidentiary hearings were held in Fort Wayne, Indiana on October 15, 1987, and again on October 20, 1987. Donald J. Graves was personally present at all of the aforesaid proceedings except that he was not present on October 20, 1987. On November 2, 1987 in South Bend, Indiana, further testimony was heard in regard to a second motion to cite the plaintiffs, Donald J. Graves (hereinafter "Graves") and Graves Body Crusher, Inc. (hereinafter "GBCI") for contempt. Therefore, there are two issues before this court: the determination of damages, costs, and attorney fees as the result of this court's July 17, 1987, order; and the question of whether or not there is further contemptuous conduct.

It is the intent of this written memorandum to fully comply with the mandates of Rule 52 of the Federal Rules of Civil Procedure.

The court will first deal with the question of whether or not Graves either in his individual capacity and/or as an agent of GBCI engaged in further contemptuous conduct in August and September of 1987, in regard to dealings with one Earl Ingram (hereinafter "Ingram") of Norfolk, Virginia. Basically, the plaintiffs have put on no evidentiary defense in regard to these matters.[1] The evidence appears to be that

---

1. An exception is that during cross-examination of Rose Graves it was asserted that an employee

Ingram of Norfolk, Virginia saw one of the Graves' ads in the "LOCATOR", and contacted Graves by telephone in August of 1987. Promotional materials bearing the name and photo of Donald J. Graves were mailed to Ingram on or about August 28, 1987. A "certificate of ownership" signed by Rose Graves was also mailed. Graves had requested payments to him *personally* in cash or checks, each to be under $10,000.00 allegedly in order to "avoid governmental scrutiny." On Monday evening, September 28, 1987, Ingram cancelled his purchase contract for a crusher because of Graves' excuses related to non-delivery thereof. At that time, Graves mentioned Kent Murphy, Kemsco Group, Markle Manufacturing, and Marvin Bradburn and "his brother". Graves indicated to Ingram that the named individuals were a fly-by-night operation, and a bed of snakes, who had copied his patented machine. He also indicated that Ingram would be sued by Graves.

On October 5, 1987, a notice of deposition of Earl Ingram was delivered to Graves' attorney of record in this case. On October 8, 1987, Graves again telephoned Ingram in Norfolk, Virginia with the same allegations of patent infringement and the threat of filing suit against Ingram. On October 12, 1987, the deposition of Kent Murphy was taken. On October 13, 1987, the deposition of Earl Ingram was taken in Norfolk, Virginia.

Although the deposition of Ingram represents a somewhat guarded and indeed careful approach to the subject, the salient facts are before the court without serious dispute. The details and documents support the outline of the previous dealings between Ingram and Graves, which certainly at the outset are a manifestation of free market competition and do not run headlong into any orders of this court. It is only the conduct of Graves at the later stages of those transactions that causes serious problems and concern here.

There is no question that conversations and business transactions indeed occurred involving Graves and Ingram. Neither is this court called upon to pass on the business or ethical atmosphere of the Graves–Ingram transaction. Its focus must be on whether or not the conduct of Graves is contemptuous of earlier orders of this court. It is beyond any dispute that on September 28, 1987 after the telephone conversation of Graves and Ingram, that the latter decided not to purchase a machine from the former. Ingram thereupon purchased a crusher from Marvin Bradburn at Car–Go Corporation as indicated by the appropriate supporting documents. After Ingram ordered the Car–Go crusher, Ingram telephoned Graves at the latter's home at approximately 9:00 p.m. on Monday, September 28, 1987. It is at this point that Graves' conduct must be carefully scrutinized. According to Ingram's testimony, Ingram had never mentioned the names of any of the defendants in this case before that evening telephone conversation on September 28, 1987. Graves was certainly within the outer limits of free speech, or commercial free speech, and the right of one competitor to downplay, bad-mouth and condemn a competitor and its product. The "fly-by-night" and "bed of snakes" comments fall within the ambit of protected free commercial speech in the commercial free marketplace. However, in this conversation, Graves went further and transgressed the boundaries of acceptable free speech. He did so when he accused the defendants of patent infringement, and more specifically, when he threatened suit against Ingram with reference to his purchase of a Car–Go crusher. From the days of Adam Smith to Milton Friedman, a very large leeway has been given to statements made in the inter-competitive process of the free market. However, Graves has transgressed again a specific order of this court. There is not the slightest doubt that he has done so willfully, maliciously, and intentionally. The record here clearly discloses

---

of GBCI, namely Naomi Lewis, had made the sale in question to Ingram. However, Ms. Lewis, who is within the territorial subpoena power of this court was not produced to corroborate

that piece of testimony. This court has very serious reservations with reference to this item of uncorroborated testimony, and, therefore rejects the same as being incredible.

that Donald J. Graves is a judgment proof loose cannon whose utter disdain for the processes and orders of this court is all too apparent.

Immediately after the Graves–Ingram telephone conversation on the evening of September 28, 1987, Ingram called Marvin Bradburn to confirm that he wanted Bradburn to deliver the crusher. Subsequent arrangements were then made.

After notice of deposition was delivered to plaintiffs' counsel on October 5, 1987, on October 8, 1987 Graves once again called Ingram, and in this final telephone call between the two, Graves again mentioned his patent and again declared that all crushers with side doors infringed his patent. The seeds were clearly planted in Ingram's mind by Graves that Graves would sue Ingram if Ingram purchased the crusher. Graves apparently was explicitly attempting to use the patent infringement/threat-to-sue approach to have a chilling effect on the sales of his competitors.

This court's order dated July 17, 1987 re-stated the previous injunction of Judge William C. Lee of this court dated August 24, 1982, concerning statements directly or indirectly which would be reasonably calculated to indicate to the consuming public that the trash compactors manufactured by the defendants infringed any claim of U.S. patent 4,188,876, the Graves patent. All of the plaintiffs have testified that they were aware of the aforesaid August 24, 1982, order and its injunction.

Although invited to do so by the defendants, this court prefers not to bottom the liability of GBCI on the concept of successor liability, though that concept has certainly been announced in this circuit in *Travis v. Harris Corporation,* 565 F.2d 443, 447 (7th Cir.1977); *see also Leannais v. Cincinnati, Incorporated,* 565 F.2d 437 (7th Cir.1977), on remand 480 F.Supp. 286 (E.D.Wis.1979). Instead, liability should be grounded on Graves' relationship with GBCI.

The circumstances of this case clearly warrant the inference that in the dealings between Ingram and Graves, and the dealings related thereto, as well as the conversations that ensued therefrom, Graves was acting as an agent employee and authorized representative of GBCI. At the very least, Graves had apparent authority to act for GBCI. Therefore, GBCI must stand responsible along with Graves for this last series of contemptuous conduct. The court now finds that the plaintiffs, Donald J. Graves and Graves Body Crusher, Inc. are again in contempt of this court because of the false and misleading statements that were made by Graves in his telephone conversations with Ingram on September 28, 1987, and on October 8, 1987.

A United States District Court has the inherent authority to hold a party in civil contempt in order to enforce compliance with an order of that court, and to compensate for losses and damages. *Fisher v. Marubeni Cotton Corp.,* 526 F.2d 1338, 1340 (8th Cir.1975); *United States v. Greyhound Corp.,* 363 F.Supp. 525, 370 F.Supp. 881 (N.D.Ill.1973), *aff'd* 508 F.2d 529 (7th Cir.1974); and *Powell v. Ward,* 643 F.2d 924, 931 (2d Cir.1981), *cert. denied* 454 U.S. 832, 102 S.Ct. 131, 70 L.Ed.2d 111 (1981).

This court has found that the plaintiffs Graves and GBCI, knew of the court's orders of August 24, 1982, and July 17, 1987, and that these two plaintiffs violated the aforesaid orders. Therefore, said plaintiffs must be held in contempt under authority of *Shillitani v. United States,* 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966). Such contempt having been established by clear and convincing evidence, the court may proceed to award damages.

Once contempt is established, the court may compensate for all damage which directly and proximately resulted from the contemptuous actions. This court can also assess a civil fine against the plaintiffs for contemptuous actions in an amount sufficient to prevent future contemptuous actions by the plaintiffs, even though this action is in civil contempt and not criminal contempt. *See Shakman et al. v. Democratic Organization of Cook County,* 533 F.2d 344 (7th Cir.1976), *cert. denied,* 429 U.S. 858, 97 S.Ct. 156, 50 L.Ed. 2d 135 (1976).

However, this court elects not to impose a separate fine, but rather to determine in a restrained, conservative and reasonable fashion the amount of damages sustained by the defendants, and to award attorney fees and costs. This court chooses not to bottom its decision on the analogies of defamation actions, although the defendant has invited it to do so. The court is well aware of the opinions of an equally divided court in *Indianapolis Newspapers, Inc. v. Fields*, 254 Ind. 219, 259 N.E.2d 651 (1970), *cert. denied*, 400 U.S. 930, 91 S.Ct. 187, 27 L.Ed.2d 190 (1970), and *Erdman v. White*, 411 N.E.2d 653 (Ind.App.1980). Neither is this court bottoming its decision on the analogy to separate actions for unfair competition, again having been invited to do so by the defendants.

The individual defendant, Marvin Bradburn, has suffered substantial general damage as a result of the contemptuous conduct of Graves. His testimony, which is certainly the testimony of a defendant testifying on his own behalf, is credible. However, there is some element of exaggeration as to the amounts involved. The salient facts that he testified to indicate that there was real and substantial damage as a direct result of the contemptuous conduct here. This court finds that Bradburn and Car–Go Corporation have been damaged in the sum of $100,000.00, as a result of the contemptuous action of Graves and that H. Kent Murphy has been damaged in the amount of $50,000.00 as a result thereof.

With respect to attorney's fees, the defendant's counsel has fully and carefully presented to this court a detailed statement of legal services rendered that relate to these proceedings. The same stands before this court, supported by affidavit, without dispute. There has been actual invoicing of attorney fees in the sum of $113,738.18 which the court finds to be reasonable. In addition, there have been fees generated with reference to the second contempt proceeding in the sum of $12,144.40. Both the above amounts include costs and disbursements, all of which the court finds reasonable. The total amount awarded as fees and costs is $125,882.58.

This court has attempted to follow the mandates of *Tomazzoli v. Sheedy*, 804 F.2d 93 (7th Cir.1986) in making this award of fees.

The following judgment shall enter: (1) against plaintiff, Donald J. Graves and in favor of defendants Marvin Bradburn and Car–Go Corporation for damages in the sum of $100,000.00; (2) against the plaintiff Donald J. Graves and in favor of defendant H. Kent Murphy in the sum of $50,000.00; (3) costs and attorney fees assessed against plaintiff Donald J. Graves in the sum of $113,738.18; (4) costs and attorney's fees against the plaintiffs, Donald J. Graves and Graves Body Crusher, Inc., in the sum of $12,144.40; (5) any remaining costs assessed against plaintiff Donald J. Graves.

Although invited to do so, this court has reluctantly determined not to order a so-called corrective notice in the LOCATOR. This is a very close judgment call. Additionally, and on its own motion, this court now ORDERS the Clerk to serve a copy of this order on the United States Attorney for this district, so that said United States Attorney and a duly constituted grand jury may determine whether or not Donald J. Graves should be prosecuted for criminal contempt of orders of this court. IT IS SO ORDERED.