Brenda J. KENNEDY, et al., Plaintiffs,

v.

ALABAMA STATE BOARD
OF EDUCATION, et
al., Defendants.

No. Civ.A. 89–T–196–N.

United States District Court,
M.D. Alabama,
Northern Division.

Jan. 13, 2000.

James U. Blacksher, Birmingham, AL, Leslie Proll, Washington, DC, Joe R. Whatley, Jr., Whatley Drake, L.L.C., Birmingham, AL, Maureen Kane Berg, Whatley Drake LLC, Birmingham, AL, Andrew Clay Allen, Whatley Drake, L.L.C., Birmingham, AL, Terry G. Davis, Terry G. Davis, P.C., Montgomery, AL, Kenneth Lamar Thomas, John W. Adams, Jr., Thomas, Means, Gillis, Devlin, Robinson & Seay, PC, Montgomery, AL, Beverly P. Baker, Richard H. Walston, Michael K. K. Choy, Haskell, Slaughter, Young & Gallion, Birmingham, AL, Raymond P. Fitzpatrick, Jr., Fitzpatrick, Cooper & Clark, Birmingham, AL, John W. Adams, Jr., Thomas, Means, Gillis, Devlin, Robinson & Seay, PC, Montgomery, AL, Gregory Brent Stein, Angelique Miche Scheffler Cooper, Stein & Brewster, Mobile, AL, George Lamar Beck, Jr., David B. Byrne, P.C., Montgomery, AL, Henry H. Caddell, Vanessa Arnold Shoots, Thiry & Caddell, Mobile, AL, A. Wesley Pitters, A. Wesley Pitters, P.C., Montgomery, AL, for Plaintiffs.

J. Allen, Schreiber, Gerald Alan Templeton, Lloyd, Schreiber & Gray, P.C., Birmingham, AL, William D. Jones, III, Anthony A. Joseph, Johnston, Barton, Proctor & Powell, Birmingham, AL, William H. Pryor, Jr., Atty. General, Office of the Atty. General, Montgomery, AL, Renee Culverhouse, Office of General Counsel, State of Alabama, Montgomery, AL, Helen Kathryn Downs, Johnston, Barton, Proctor & Powell, Birmingham, AL, for Defendants.

### ORDER

MYRON H. THOMPSON, District Judge.

This long-running lawsuit presents the question whether a defendant from whom

front-pay relief is sought in civil-contempt proceedings and in claims brought under a number of civil rights statutes has a right to a jury trial. The court holds that such relief does not trigger the right.

This case involves class-action allegations of race and gender discrimination in the employment practices of Alabama's postsecondary educational system. This court has approved a consent decree resolving the race discrimination claims, see *Shuford v. Alabama State Bd. of Educ.*, 846 F.Supp. 1511 (M.D.Ala.1994), and another consent decree resolving the gender discrimination claims, see *Shuford v. Alabama State Bd. of Educ.*, 897 F.Supp. 1535 (M.D.Ala.1995). The defendants in this litigation are the Alabama State Board of Education and various institutions and officials in the postsecondary educational system.

### I.

The events giving rise to the jury issue are as follows:

*October 15, 1998:* Humphrey L. Shuford (a named plaintiff who represented African–Americans in this litigation) and Brenda J. Kennedy (a member of the plaintiff class) filed a motion seeking to have the defendants in this litigation held in civil contempt and sanctioned for their alleged failure to comply with the 1994 consent decree resolving race discrimination claims.[1] As a part of the sanctions, Shuford and Kennedy sought injunctive relief, backpay, and front pay.

*November 23, 1998:* Kennedy was allowed to intervene and replace Shuford in this litigation as the representative of the

African–American class. As result, the pending contempt motion is being sought by Kennedy only.

*December 11, 1998:* Kennedy filed a separate complaint-in-intervention seeking relief for herself personally. She based her complaint on Title VI of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000d through 2000d–4; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. § 1981a, 2000e through 2000e–17; 42 U.S.C.A. § 1981; the fourteenth amendment to the United States Constitution as enforced through 42 U.S.C.A. § 1983; and the 1994 race-discrimination consent decree.[2] She properly invoked the jurisdiction of the court pursuant to 28 U.S.C.A. §§ 1443(a)(3), and 1343(a)(4). Kennedy seeks injunctive relief, backpay, and front pay.

*December 28, 1998 and thereafter:* The defendants filed demands for jury trial on both Kennedy's contempt motion and her complaint-in-intervention.

*February 9 and June 16, 1999:* Kennedy filed motions to strike the defendants' jury demand.

### II.

The jury issue is presented to the court in the two motions to strike filed by Kennedy on February 9 and June 16, 1999. The defendants maintain that, because Kennedy seeks front pay in her contempt motion and in her individual complaint, they are entitled to a jury trial on the issues presented by the motion and the complaint. Kennedy responds in her mo-

---

1. Although plaintiff charges in both the contempt motion and the pretrial order that the defendants have violated both the 1994 and 1995 consent decrees (see Plaintiff's amended motion for order to show cause why defendants should not be held in contempt and sanctioned, filed April 12, 1999, at 2 (Doc. no. 856); Order on pretrial hearing filed October 26, 1999, at 5 (Doc. no. 913)), counsel for plaintiff subsequently made clear in a telephone conference call on January 5, 2000, that plaintiff is charging a violation of the 1994 race-discrimination consent decree only.

2. Although Kennedy asserts in her individual complaint and the pretrial order that the defendants have violated both the 1994 and 1995 consent decrees (see Amended complaint of substituted plaintiff class representative, filed April 12, 1999, at 8 ¶ 16 (Doc. no. 855); Order on pretrial hearing, filed October 26, 1999, at 5 (Doc. no. 913)), counsel for Kennedy subsequently made clear in a telephone conference call on January 5, 2000, that she is charging a violation of the 1994 race-discrimination consent decree only.

tions that her front-pay request does not raise a jury issue.

### A.

█ Before turning to whether the defendants are entitled to a jury trial on Kennedy's front-pay request, the court must first determine what this relief called front pay is. Front pay constitutes "prospective lost earnings" that a court may award, *Goldstein v. Manhattan Industries,* 758 F.2d 1435, 1448 (11th Cir.1985), to a complainant who has been illegally denied a position in order to make her whole. *See Padilla v. Metro–North Commuter R.R.,* 92 F.3d 117, 125–26 (2nd Cir.1996) (stating that front-pay award "serves a necessary role in making victims of discrimination whole in cases where the factfinder can reasonably predict that the plaintiff has no reasonable prospect of obtaining comparable alternative employment"); *Barbour v. Merrill,* 48 F.3d 1270, 1279 (D.C.Cir.1995) (stating that purpose of front-pay award is "to make a victim of discrimination 'whole' and to restore him or her to the economic position he or she would have occupied but for the unlawful conduct of his or her employer") (citation omitted); *Carter v. Sedgwick County, Kan.,* 36 F.3d 952, 957 (10th Cir.1994) (stating that when fashioning a front-pay award, the district court should determine the amount "required to compensate a victim for the continuing future effects of the unlawful discrimination"); *Smith v. World Insurance Co.,* 38 F.3d 1456, 1466 (8th Cir.1994) (district court may award equitable remedy of front pay under Age Discrimination in Employment Act of 1967, 29 U.S.C.A. §§ 621–634, to make party whole).

█ However, front pay is not a preferred remedy; it is only a substitute for instatement whereby a plaintiff is placed in the same or comparable position that she would have occupied in the absence of an unlawful act. *See United Paperworkers Local 274 v. Champion International Corporation,* 81 F.3d 798, 805 (8th Cir.1996) (stating that front pay is generally appropriate when reinstatement must be denied); *Scarfo v. Cabletron Systems, Inc.,* 54 F.3d 931, 954 (1st Cir.1995) (district court has discretion to award front pay in Title VII case when reinstatement is "impracticable or impossible"); *Hadley v. VAM PTS,* 44 F.3d 372, 376 (5th Cir.1995) (equitable remedy of front pay appropriate when reinstatement not feasible).

Rather, instatement is the much preferred remedy because, with it, the complainant is literally made whole with the job illegally denied her, *see Duke v. Uniroyal, Inc.,* 928 F.2d 1413, 1424 (4th Cir. 1991) (reinstatement is the "much preferred" remedy); *Squires v. Bonser,* 54 F.3d 168, 172 (3rd Cir.1995) ("Reinstatement advances the policy goals of make-whole relief and deterrence in a way which money damages cannot."); *Woodhouse v. Magnolia Hospital,* 92 F.3d 248, 258 (5th Cir.1996) (concluding that in light of recognition that reinstatement is preferred remedy, district court did not abuse its discretion in ordering plaintiff reinstated).

█ The general rule therefore is that a person should be instated to an illegally denied position, and front pay is an exception to that rule. And, thus, a court, in the exercise of its remedial discretion, may award front pay only if it can explain why instatement is not appropriate; if it cannot, then the complainant is entitled to instatement. A typical reason given for awarding front pay is where the position sought is no longer available or where personal antagonism between the parties has made instatement infeasible. *See Goldstein v. Manhattan Industries,* 758 F.2d 1435, 1449 (11th Cir.1985) ("Front pay may be particularly appropriate in lieu of reinstatement where discord and antagonism between the parties would render reinstatement ineffective as a make-whole remedy."); *see also Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1182 (2nd Cir. 1996) (upholding front pay award where antagonism between the parties made reinstatement inappropriate); *Starceski v. Westinghouse Electric Corporation,* 54 F.3d 1089, 1103 (3rd Cir.1995) (affirming district court's denial of reinstatement,

reasoning that reinstatement not feasible because of lack of available positions and animosity between the parties).

### B.

It is with this understanding of front pay that the court now turns to the question of whether front pay is a type of relief to which a seventh-amendment right to a jury trial attaches. The court will first consider whether the right attaches under Title VI, Title VII, § 1981 and § 1983, and will then, in a separate and later discussion, consider if it attaches as part of the civil-contempt proceedings.

When the right to a jury trial is at issue, a court should first look to see if Congress has provided the right to a jury trial; if Congress has created a legal right, a jury trial is required. If Congress has not provided an express right, then the court must decide if a constitutionally protected right to a jury trial exists under the seventh amendment to the United States Constitution. *See Tull v. United States*, 481 U.S. 412, 417–27 & fn. 3, 107 S.Ct. 1831, 1835–1840 & fn. 3, 95 L.Ed.2d 365 (1987); *Lorillard v. Pons*, 434 U.S. 575, 585, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978); *Waldrop v. Southern Company Services, Inc.*, 24 F.3d 152, 155 (11th Cir. 1994).

### 1.

The court will therefore consider whether Congress has provided the right to a jury trial for front-pay requests under any of the statutes relied upon by Kennedy. With regard to Title VI, § 1981, and § 1983, the answer is straightforward: none provides for jury trials at all.[3]

Title VII, in contrast, expressly provides for a jury trial; but the right to invoke trial by jury turns on the nature of the relief requested. Title VII provides that for violations a "complaining party may recover compensatory and punitive damages," 42 U.S.C.A. § 1981a(a)(1), and the court may "order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay ..., or any other equitable relief as the court deems appropriate." 42 U.S.C.A. § 2000e-5(g). It further set caps on the amount of punitive damages and on the

3. Title VI provides in part:

"No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C.A. § 2000d. Section 1981 provides:

"(a) Statement of equal rights
All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
"(b) 'Make and enforce contracts' defined
For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

"(c) Protection against impairment
The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law."
And § 1983 provides:
"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

amount of compensatory damages allowable "for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." 42 U.S.C.A. § 1981a(b)(3). Title VII then provides that, "If a complaining party seeks compensatory or punitive damages under this section ... any party may demand a trial by jury." 42 U.S.C.A. § 1981a(c)(1). It further states, however, that "Compensatory damages awarded under this section shall not include backpay, interest on backpay, or any other type of relief authorized under section 706(g) of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000e–5(g)]." 42 U.S.C.A. § 1981a(b)(2).

In *McCue v. State of Kansas, Dept. of Human Resources,* 165 F.3d 784 (1999), the Tenth Circuit Court of Appeals held that Title VII's authorization of jury trials did not extend to requests for front pay. The court examined the language of Title VII as follows:

"[42 U.S.C. § ] 2000e–5(g) allows the court to award 'equitable relief as [it] deems appropriate,' for Title VII violations. Such relief explicitly includes back pay, although no mention is made of front pay. 42 U.S.C. § 1981a permits the award of punitive and compensatory damages as a matter of law for actions brought under Title VII. However, that same section expressly excludes from the allowed compensatory damages 'backpay, interest on backpay, or any other type of relief authorized under [42 U.S.C. § 2000e–5(g) ].' Section 1981a does allow compensatory damages for, among other things, 'future pecuniary loss.'

"Damages awarded under section 2000e–5(g) are equitable relief to be determined by the court, while damages awarded under section 1981a are legal damages that may be submitted to a jury. The District Court held that front pay is included in 'future pecuniary loss,' and thus is a form of legal damages to be determined by the jury. The State contends this holding is in error, because front pay is an 'other type of relief

authorized under [section 2000e–5(g) ],' and thus expressly excluded from the available relief under section 1981a.

"The District Court .held that Congress knew how to expressly exclude back pay from the available relief under section 1981a, and could have similarly expressly excluded front pay if that were its intent. Furthermore, by including 'future pecuniary loss' among the available relief, section 1981a's plain language permits front pay. This analysis fails.

"Although this issue has not been decided expressly, courts generally take it upon themselves to calculate front pay as an equitable remedy under section 2000e–5(g). *See, e.g., Kim v. Nash Finch Co.,* 123 F.3d 1046, 1054 n. 3 (8th Cir.1997). As early as 1989, two years before Congress passed section 1981a, the Tenth Circuit had indicated that front pay was included among the equitable remedies available under section 2000e–5(g): 'Reinstatement is one of the express affirmative actions authorized under 42 U.S.C. § 2000e–5(g) and certainly "front pay" would qualify as "other equitable relief" the court may grant if it deemed appropriate.' *EEOC v. General Lines, Inc.,* 865 F.2d 1555, 1561 (10th Cir.1989). That such relief was available as 'other equitable relief' under section 2000e–5(g) in 1991—when section 1981a was passed—establishes that it would be included in the set of 'any other type of relief authorized under [42 U.S.C. § 2000e–5(g) ].' Since courts had indicated—prior to the passage of section 1981a—that front pay was included among the equitable relief available under section 2000e–5(g), we hold Congress to have excluded such relief under section 1981a."

165 F.3d at 791–92.

*McCue's* reasoning has support in the legislative history of the Civil Rights Act of 1991 which amended Title VII to add § 1981a and allow for "compensatory damages." In announcing a compromise on the bill that was to become the 1991 Act,

Senator Edward Kennedy stated that compensatory damages do not include front pay. 137 Cong.Rec. S15234 (daily ed. Oct. 25, 1991). The Sponsors' Interpretive Memorandum states that the category of compensatory damages "cannot include back pay, the interest thereon, front pay, or any other relief authorized under Title VII," a statement which conforms with 42 U.S.C.A. § 1981a(b)(2). 137 Cong.Rec. S15484 (daily ed. Oct. 30, 1991). Additionally, Representative Don Edwards declared in his section-by-section analysis that compensatory damages "cannot include remedies already available under Title VII, including back pay, the interest thereon, front pay, or any other relief authorized under Title VII." 137 Cong.Rec. H9527 (daily ed. Nov. 7, 1991).

The Equal Employment Opportunity Commission, the agency charged with enforcing Title VII, has taken the position that front pay does not fall within Title VII's definition of "compensatory damages." In an interpretive decision, the agency stated that "[f]rontpay is a type of relief authorized under Title VII and, therefore is excluded from the definition of compensatory damages." Office of Legal Counsel, EEOC, Enforcement Guidance: Compensatory and Punitive Damages Available Under § 102 of the Civil Rights Act of 1991, Decision No. 915.002 (July 14, 1992), *available in*, 1992 WL 189089, at *3 (internal quotation marks and citations omitted). Moreover, the decision states that "[p]ecuniary losses [as a category of compensatory damages under Title VII] include ... moving expenses, job search expenses, medical expenses, psychiatric expenses, physical therapy expenses, and other quantifiable out-of-pocket expenses that are incurred as a result of the discriminatory conduct." *Id.*, 1992 WL 189089, at *4 (citations omitted). Notably, the list does not include front pay.

Finally, several courts of appeals, while not directly addressing whether a request for front pay triggers the right to a jury trial under Title VII's language, have weighed in on a number of related issues and reached conclusions consistent with the holding in *McCue*. In *Williams v. Pharmacia*, 137 F.3d 944 (7th Cir.1998), the defendant argued that awarding front pay is not within a district court judge's equitable powers under Title VII. The Seventh Circuit held that front pay "may be awarded where reinstatement is unavailable," and as such it "is the functional equivalent of reinstatement because it is a substitute remedy that affords the plaintiff the same benefit as the plaintiff would have received had she been reinstated." *Id.* at 951–52. "As the equivalent of reinstatement, front pay falls squarely within the statutory language authorizing 'any other equitable relief.'" *Id.* at 952.

Other federal appellate courts have held that front pay is not subject to Title VII's compensatory damages' caps.[4] While these discussions are not on point, they are instructive because only compensatory damages are subject to the caps; other types of relief (other than punitive dam-

---

4. Title VII contains the following caps on "compensatory damages":

"The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party—
(A) in the case of a respondent who has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $50,000;
(B) in the case of a respondent who has more than 100 and fewer than 201 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $100,000; and
(C) in the case of a respondent who has more than 200 and fewer than 501 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $200,000; and
(D) in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $300,00."
42 U.S.C.A. § 1981a(b)(3).

ages) are considered equitable remedies. In *Gotthardt v. National Railroad Passenger Corporation*, 191 F.3d 1148, 1154 (1999), the Ninth Circuit Court of Appeals concluded that Congress "understood that front pay was one of the preexisting 'types of [equitable] relief authorized under section 706(g)' ... that would not fall" within the caps. Similarly, in *Kramer v. Logan County School District No. R–1*, 157 F.3d 620, 626 (1998), the Eighth Circuit Court of Appeals held that front pay is not subject to Title VII's caps because "front pay is not so much a monetary award for the salary that the employee would have received but for the discrimination, but rather the monetary equivalent of reinstatement, to be given in situations where reinstatement is impracticable or impossible." And similarly, the D.C. Circuit Court of Appeals stated in *Martini v. Federal National Mortgage Association*, 178 F.3d 1336, 1348–49 (D.C.Cir.1999), that, because "we have regarded frontpay as an equitable remedy available under" § 2000e–5(g) both before and after the 1991 Act, § 1981(b)(2) "excludes frontpay from the range of compensatory damages subject to the damages cap." [5] *Cf. Hadley v. VAM PTS*, 44 F.3d 372, 376 (5th Cir. 1995) ("[f]ront pay is an equitable remedy that can be employed when reinstatement is infeasible") (citation omitted); *Lussier v. Runyon*, 50 F.3d 1103, 1107–08 (1st Cir.) (front pay is an available equitable remedy under Title VII), *cert. denied*, 516 U.S. 815, 116 S.Ct. 69, 133 L.Ed.2d 30 (1995).

For the above reasons, this court agrees with the reasoning in *McCue*, and similarly holds that Title VII does not provide for jury trial of front-pay requests.

**2.**

■ Because neither Title VI, Title VII, § 1981, nor § 1983 expressly provides for jury trial on front-pay requests, the court will turn to whether the defendants are entitled to a jury trial under the seventh amendment.

The seventh amendment preserves the right to a jury trial "[i]n suits at common law, where the value in controversy shall exceed twenty dollars." U.S. Const. amend. VII. "The amendment extends the right to a jury trial to all suits where legal rights are involved, whether at common law or arising under federal legislation." *Waldrop v. Southern Company Services, Inc.*, 24 F.3d 152, 156 (11th Cir. 1994). "Thus, the seventh amendment applies to actions enforcing statutory rights and requires a jury trial on demand whenever the statute creates legal rights and remedies that are 'enforceable in an action for damages in the ordinary courts of law.'" *Id.* (quoting *Curtis v. Loether*, 415 U.S. 189, 194, 94 S.Ct. 1005, 1008, 39 L.Ed.2d 260 (1974)). "Compensatory damages are the classic form of legal relief." *Id.* (citations omitted). "In contrast, the right to a jury trial does not extend to cases in which only equitable rights are at stake." *Id.* (citations omitted).

■ To resolve the issue of the availability of a jury trial under the seventh amendment when the statute does not provide the answer on its face, the Supreme Court has established a two-pronged approach. *See Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 565, 110 S.Ct. 1339, 1344, 108 L.Ed.2d 519 (1990). First, the nature of the statutory action is compared to 18th–century

---

**5.** The Sixth Circuit Court of Appeals is the only appellate court that has held that front pay falls within the compensatory damages cap of Title VII. In *Hudson v. Reno*, 130 F.3d 1193, 1203–04 (1997), *cert. denied*, —— U.S. ——, 119 S.Ct. 64, 142 L.Ed.2d 50 (1998), the appellate court concluded that, according to the plain meaning of "future pecuniary losses" set forth in Webster's Dictionary, front pay must be a "future pecuniary loss" subject

to the compensatory damages cap, and any other interpretation would render the terms meaningless. Moreover, the court noted that the Sixth Circuit has treated front pay as primarily a legal rather than equitable remedy. *Id.* at 1203.

After consideration of the arguments, this court rejects the holding of the Sixth Circuit and embraces the reasoning of the other federal courts of appeals.

actions brought in the English courts prior to the merger of the courts of law and equity; and, second, the remedy sought is examined to determine whether it is legal or equitable in nature. *See id.* The second inquiry is the "more important" of the two. *Id.*

As to the first prong, although there were no discrimination actions at common law, the remedies sought by Kennedy here appear comparable to actions brought before courts of law in 18th–century England. *See Waldrop,* 24 F.3d at 156 (backpay and reinstatement remedies sought for discharge in violation of § 504 of Rehabilitation Act were comparable to actions brought before courts of law in 18th–century England) (citing Timothy H. Heinsz, The Assault on the Employment at Will Doctrine: Management Considerations, 48 Mo.L.Rev. 855, 858–62 (1983)); *see also Hill v. Winn–Dixie Stores, Inc.,* 934 F.2d 1518, 1524 (11th Cir.1991) (actions pursuant to the Jury System Improvements Act of 1978, 28 U.S.C.A. § 1875, which protects an employee from discharge or intimidation by her employer on account of her jury service, is analogous to (1) an action in tort to redress discrimination and (2) an action for breach of an employment contract); *cf. Curtis,* 415 U.S. at 196 n. 110, 94 S.Ct. at 1009 n. 110 ("An action to redress racial discrimination may also be likened to an action for defamation or intentional infliction of mental distress.").

Nonetheless, this does not mean that a jury trial is constitutionally required in all actions relying on statutes relied upon by Kennedy. "Rather, actions seeking only equitable relief are unaffected by the availability of a jury trial for plaintiffs who seek damage remedies." *Waldrop,* 24 F.3d at 157. Thus, the essential issue is whether Kennedy's request for front pay constitutes legal or equitable relief.

Generally, "an action for money damages was 'the traditional form of relief offered in the courts of law.'" *Terry,* 494 U.S. at 570, 110 S.Ct. at 1347 (quoting *Curtis,* 415 U.S. at 196, 94 S.Ct. at 1009). "However, it does not necessarily follow

that all awards of monetary damages constitute legal relief." *Waldrop,* 24 F.3d at 157. Over the years, the Supreme Court has outlined three possible exceptions to the general rule that monetary remedies are legal claims: (1) restitutionary awards, *see, e.g., Terry,* 494 U.S. at 570, 110 S.Ct. at 1348; *Tull v. United States,* 481 U.S. 412, 424, 107 S.Ct. 1831, 1839, 95 L.Ed.2d 365 (1987); *Curtis,* 415 U.S. at 196 n. 11, 94 S.Ct. at 1009 n. 11; (2) money awards incidental to equitable relief, *see, e.g., Tull* 481 U.S. at 424, 107 S.Ct. at 1839; *Curtis,* 415 U.S. at 197, 94 S.Ct. at 1010; and (3) discretionary money awards. *See, e.g., Albemarle Paper Co. v. Moody,* 422 U.S. 405, 442–43, 95 S.Ct. 2362, 2384, 45 L.Ed.2d 280 (1975) (Rehnquist, J., concurring); *Curtis,* 415 U.S. at 197, 94 S.Ct. at 1010. *See also* Robert L. Strayer, II, Project, *Asserting the Seventh Amendment: An Argument for the Right to a Jury when Only Back Pay Is Sought under the Americans with Disabilities Act,* 52 Vand.L.Rev. 795 (1999).

FIRST EXCEPTION: "Restitution is generally defined as an equitable remedy designed to cure unjust enrichment of the defendant absent consideration of the plaintiff's losses." *Waldrop,* 24 F.3d at 158. "For example, if the defendant misappropriates money held in trust for the plaintiff and invests the money in corporate stock, the defendant will be held liable to make restitution of the stock even though the stock's value might far exceed the money taken from the plaintiff." *Id.* "Additionally, restitution can mean restoration in kind of a specific thing." *Id.* "For example, if a defendant fraudulently purchases an automobile by conveying a check supported by insufficient funds, the plaintiff may rescind the deal and recover the vehicle." *Id.* It is apparent that front pay does not fall within this exception. *Cf. Terry,* 494 U.S. at 571, 110 S.Ct. at 1348 (backpay under the Labor Management Relations Act, 29 U.S.C.A. § 185, is not restitutionary).

SECOND EXCEPTION: In *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893 (1937), the Supreme Court stated that the seventh amendment does not apply to "cases where recovery of money damages is an incident to equitable relief." 301 U.S. at 47, 57 S.Ct. at 629. However, one commentator has noted that two circumstances raise serious questions as to whether the incident-to-equitable-relief exception is still constitutionally valid. *See* Robert L. Strayer, II, Project, *Asserting the Seventh Amendment: An Argument for the Right to a Jury when Only Back Pay Is Sought under the Americans with Disabilities Act*, 52 Vand.L.Rev. 795, 814–817 (1999). First, the Supreme Court has, since the *NLRB* case, consistently rejected the exception. *See Curtis*, 415 U.S. at 197, 94 S.Ct. at 1010 (because Title VIII of the Civil Rights Act of 1968, 42 U.S.C.A. § 3612, contains a plain authorization of actual and punitive damages, such are not incidental to the equitable relief provided under the statute); *Tull*, 481 U.S. at 425, 107 S.Ct. at 1839 (since civil penalties could have been sought independent of equitable relief, the right to a jury trial cannot be precluded by characterizing the legal claim as incidental to equitable relief); *Terry*, 494 U.S. at 571, 110 S.Ct. at 1339 ("incidental" exception does not apply because plaintiff had only money damages available to him as relief); *Wooddell v. International Brotherhood of Electrical Workers, Local 71*, 502 U.S. 93, 97–98, 112 S.Ct. 494, 497, 116 L.Ed.2d 419 (1991) (held that plaintiff entitled to a jury trial because lost wages, requested to pay for jobs to which a union failed to refer him, were not incidental to reinstatement). Second, the Supreme Court has made clear that a jury trial is required where both equitable and legal claims exist in the same lawsuit. *See Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 470–73, 82 S.Ct. 894, 896–97, 8 L.Ed.2d 44 (1962) (held that intent behind modern Federal Rules of Civil Procedure not to infringe on right to a jury trial leads to conclusion that no rule exists whereby characterizing a legal issue as incidental to an equitable one will deprive one of a right to a jury trial); *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506–08, 79 S.Ct. 948, 954–55 (1959) (decision on equitable claim would not preclude a jury trial on issues common to both equitable and legal claims).

In any event, this court need not resolve whether the incident-to-equitable-relief exception is still valid, for, if it is, it does not apply to front pay in the context presented in this litigation. Front pay is given in lieu of equitable relief (instatement), and not incidental to it.

THIRD EXCEPTION: Front pay falls within the third exception, however. When the trial court has discretion to award monetary relief, the award is generally recognized as an equitable remedy, *see* Henry L. McClintock, Handbook of the Principles of Equity § 23, at 49 (2d ed. 1948) ("Equitable relief cannot be demanded ... but is granted in the discretion of the court"), to which no seventh-amendment right attaches. The exception was most recently articulated by Justice Rehnquist in his concurring opinion in *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975), which held that courts had the power to award backpay under Title VII to correct the wrongs of discrimination. In his concurrence, Justice Rehnquist noted how defining equitable actions based on whether a court has broad discretion effected the right to a jury trial. 422 U.S. at 443, 95 S.Ct at 2384. According to him, when a court has discretion as to whether to award back pay, this discretion causes the claim to be classified as equitable, and the right to a jury trial does not attach; but, if the Supreme Court were to require that district courts award backpay as a matter of course upon a finding of discrimination, backpay would lose its equitable character and would be subject to a right to a jury trial. In other words, the more restricted the discretion to award backpay, the more backpay begins to resemble a legal rather than an equitable claim for which parties

could demand a jury trial. Despite his concern about a potential seventh-amendment conflict if awards of backpay followed as a matter of course, Justice Rehnquist concurred in the decision because he thought the Court's opinion still granted broad latitude to district courts in Title VII cases to decide whether to provide back pay relief.

Here, front pay is clearly not awarded as a matter of course. To the contrary, as was explained above, front pay is the exception to the rule which requires instatement as a matter of course, and is appropriate only if the court articulates sound *equitable* reasons for not following that rule. In this sense, front pay draws upon those classic broad principles of fairness that a trial judge would rely upon in granting or denying equitable relief in general. *See McCue*, 165 F.3d at 792 ("Relegating the duty of determining front pay relief to the trial judge is reasonable....").[6]

### C.

■ The court will now turn to the issue of whether the defendants are entitled to a jury because Kennedy seeks front pay in her civil-contempt motion. Because there are no statutory provisions entitling a party to a jury trial in civil-contempt proceedings, or, at least, the parties have not pointed the court to any such provisions, the court must determine whether the right exists under the seventh amendment, and, to do this, the court must consider two factors articulated previously: first, the court must compare the action to the customary manner of trying such a cause before the merger of law and equity; and, second, it must examine the remedy sought to assess whether it is legal or

equitable in nature. *See Tull*, 481 U.S. at 417, 107 S.Ct. at 1835.

From an historical perspective, the authority to order relief as part of a contempt proceeding has been within the chancellor's authority since the days of Richard III, *see United States v. United Mine Workers*, 330 U.S. at 331 n. 4, 67 S.Ct. at 714 n. 4 (Black, J., concurring and dissenting). From the moment the federal courts were created, this function was considered to be inherently within their power. *See Robinson, ex parte*, 19 Wall. (86 U.S.) 505, 509–10, 22 L.Ed. 205, 207 (1873). The judiciary's use of the contempt power "has been uniformly held to be necessary to the protection of the court from insults and oppression while in the ordinary exercise of its duty, and to enable it to enforce its judgments and orders necessary to the due administration of law and the protection of the rights of citizens." *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 450, 31 S.Ct. 492, 501, 55 L.Ed. 797 (1911) (quoting *Bessette v. W.B. Conkey Co.*, 194 U.S. 324, 24 S.Ct. 665, 48 L.Ed. 997 (1904)).

In *Gompers*, the Supreme Court rejected the notion that contempt proceedings needed to be referred to a jury. The Court stated "that the courts are clothed with this power, and must be authorized to exercise it without referring the issues of fact or law to another tribunal or to a jury in the same tribunal." 221 U.S. at 450, 31 S.Ct. at 501. The Court then offered the following explanation for its rejection of a role for the jury in civil contempt proceedings:

> "For, if there were no such authority in the first instance, there would be no

---

**6.** Although binding Eleventh Circuit precedent holds that backpay does not carry with it a right to a jury trial in lawsuits based on Title VII prior to the Civil Rights Act of 1991, § 1981 and § 1983, *see Lynch v. Pan Am. World Airways, Inc.*, 475 F.2d 764, 765 (5th Cir.1973) (per curiam); *Harkless v. Sweeny Independent School District*, 427 F.2d at 323–24; *see also Earlie v. Jacobs*, 745 F.2d 342, 344 (5th Cir., 1984) (per curiam); *Williams v.*

*City of Montgomery*, 742 F.2d 586, 590 (11th Cir.1984), *cert. denied*, 470 U.S. 1053, 105 S.Ct. 1756, 84 L.Ed.2d 819 (1985), the trend seems to be going the other way, with backpay treated more an a legal rather than a equitable relief. *See Waldrop*, 24 F.3d at 157 ("the recent trend of Supreme Court cases is to treat backpay awards as legal remedies"). This is because backpay, unlike front pay, has become a matter of course in awarding relief.

power to enforce its orders if they were disregarded in such independent investigation. Without authority to act properly and independently the courts could not administer public justice or enforce the rights of private litigants."

*Id.* In reaching this holding in *Gompers,* the Supreme Court relied upon its earlier analysis in *Bessette v. W.B. Conkey Co.,* 194 U.S. 324, 24 S.Ct. 665, 48 L.Ed. 997 (1904), which had, in turn, looked, in part, to the status of English common law prior to this country's formation. *See also Cheff v. Schnackenberg,* 384 U.S. 373, 377, 86 S.Ct. 1523, 1524, 16 L.Ed.2d 629 (1966) (jury trials not required in civil-contempt proceedings); *Shillitani v. United States,* 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1966) (same).

This court will therefore next examine front pay, as sought in a civil-contempt proceeding, to assess whether it is legal or equitable in nature. A civil contempt sanction, regardless of form, is remedial in nature, and courts have traditionally imposed such sanctions without a jury. *See McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949). The sanction issued upon a finding of civil contempt is a "judicial sanction," *United Mine Workers,* 330 U.S. at 303, 67 S.Ct. at 701, that is considered part of a court's inherent authority to enforce its judicial orders and decrees. *See Cook v. Ochsner Foundation Hospital,* 559 F.2d 270, 272 (5th Cir.1977). "The measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief." *See McComb,* 336 U.S. at 193, 69 S.Ct. at 500. As the Supreme Court noted in *Hutto v. Finney,* 437 U.S. 678, 691, 98 S.Ct. 2565, 2573–74, 57 L.Ed.2d 522 (1978), financial penalties in a civil contempt proceeding are ancillary to a federal court's power to impose injunctive relief, and are often more effective than ordering incarceration.

Thus, properly considered, an order of compensation after a finding of contempt is the imposition of a fine made payable to the complainant, and calculated on the basis of the complainant's actual loss. *See*

*United Mine Workers,* 330 U.S. at 304, 67 S.Ct. at 701; *Norman Bridge Drug Co. v. Banner,* 529 F.2d 822, 827 (5th Cir.1976). The order of such a fine is a necessary extension of a court's power to grant whatever relief is necessary to effect compliance with its decrees. Thus, for example, in *McComb v. Jacksonville Paper Co.,* 336 U.S. at 193–95, 69 S.Ct. at 500–01, the Supreme Court upheld a district court's order requiring a contumacious defendant, which had ignored prior court orders requiring compliance with the Fair Labor Standards Act, to make back wage payments to injured employees in order to purge itself of contempt. Indeed, the caselaw is replete with instances wherein appellate or district courts have ordered compensatory relief as part of their contempt authority. *See, e.g., Badgley v. Santacroce,* 800 F.2d 33, 39 (2nd Cir.1986) (in which the appellate court directed the district court to assess compensatory damages of not less than $5000 for each person admitted to county correctional facility should defendants again violate consent decree); *Graves v. Kemsco Group, Inc.,* 676 F.Supp. 1417, 1420–21 (N.D.Ind.1988) (exercising inherent authority of United States District Court to hold party in contempt and to award compensatory damages in excess of $100,000), *aff'd,* 864 F.2d 754 (Fed.Cir.1988).

The front-pay relief sought by Kennedy does not warrant a procedure different from that afforded when other sanctions a court might impose are sought. When and if imposed, it would simply be a sanction made payable to the complainant to secure compliance. A jury trial is no more necessary when front pay is sought than when any other sanction is sought. Indeed, if any thing, a jury trial is less appropriate with regard to a front-pay issue than on other remedial issues. As stated, the decision whether to award front pay draws upon classic equitable notions because front pay is appropriate only if the court can articulate sound *equitable* reasons for varying from the general rule that make-whole relief includes instatement.

It is true that the court's power to hold an individual in contempt has been limited in the criminal context by such cases as *Bloom v. Illinois*, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968), *Frank v. United States*, 395 U.S. 147, 89 S.Ct. 1503, 23 L.Ed.2d 162 (1969), *Baldwin v. New York*, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970), *Taylor v. Hayes*, 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974), and *Codispoti v. Pennsylvania*, 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974). However, as the Supreme Court has acknowledged, these cases overruled past precedent and were a result of the Court's evolving sixth-amendment jurisprudence concerning the relationship between the potential maximum length of incarceration and criminal defendants' rights to a trial by jury. *See Bloom*, 391 U.S. at 195–200, 88 S.Ct. at 1478–81. In contrast, the seventh amendment, which requires that "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved," suggests by its very terms that the historical rulings holding that contempt proceedings proceed without a jury should remain in full force.

A comparison of *Shillitani v. U S*, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966), and *Bloom* provides strong evidence of the Supreme Court's acknowledgment of the differences between the Court's treatment of criminal and civil contempt. In *Shillitani*, the Court concluded that as long as the proceeding was a *civil contempt* action, a defendant facing a possible term of incarceration of two years has no right to a jury trial, while in *Bloom*, the Court held that defendants in *criminal-contempt* proceedings who are sentenced to a two year term of imprisonment possess the rights to a trial by jury.[7]

Finally, to the extent that Kennedy has claims also brought pursuant to Title VII, Congress has specifically preserved the court's ability to issue orders and relief in civil-contempt proceedings without a jury. *See* 42 U.S.C.A. § 2000h.[8] This provision was enacted as part of the original Civil Rights Act of 1964, and thus predated the Supreme Court's 1968 decision in *Bloom*.[9]

---

**7.** In *Bloom*, the Supreme Court held that a defendant had a right to a jury trial if the maximum potential length of incarceration is such that the offense would be considered to be a "serious offense," rather than a petty offense. 391 U.S. at 210, 88 S.Ct. at 1486. Under current Supreme Court jurisprudence, an offense that carries with it a maximum prison term of six months or less is presumed to be a "petty offense" for which there is no right to a jury trial. *See Blanton v. City of North Las Vegas*, 489 U.S. 538, 542, 109 S.Ct. 1289, 1293, 103 L.Ed.2d 550 (1989). *See generally Muniz v. Hoffman*, 422 U.S. 454, 475–76, 95 S.Ct. 2178, 2190, 45 L.Ed.2d 319 (1975) (summarizing when a jury trial is mandated for a criminal contempt proceeding in which the punishment is incarceration).

**8.** Section 2000h provides that:

"In any proceeding for criminal contempt arising under title II, III, IV, V, VI, or VII of this Act, the accused, upon a demand therefor, shall be entitled to a trial by jury, which shall conform as near as may be to the practice in criminal cases. Upon conviction, the accused shall not be fined more than $1,000 or imprisoned for more than six months.

"This section shall not apply to contempts committed in the presence of the court, or so near thereto as to obstruct the administration of justice, nor to the misbehavior, misconduct, or disobedience of any officer of the court in respect to writs, orders, or process of the court. No person shall be convicted of criminal contempt hereunder unless the act or omission constituting such contempt shall have been intentional, as required in other cases of criminal contempt.

"Nor shall anything herein be construed to deprive courts of their power, by civil contempt proceedings, without a jury, to secure compliance with or to prevent obstruction of, as distinguished from punishment for violations of, any lawful writ, process, order, rule, decree, or command of the court in accordance with the prevailing usages of law and equity, including the power of detention."

**9.** Section 2000h provides for maximum criminal punishment of a fine of not more than $1000 dollars or imprisonment for not longer than 6 months. Thus, even under *Bloom*, Supreme Court jurisprudence would not dictate a jury trial absent Congressional enactment. *See supra* note 8.

The statute, by providing that parties charged with criminal contempt have a right to a jury trial, created an exception to what was at that time considered to be the general rule that contempt proceedings are solely within the province of the trial court. Congress made clear, however, that in enacting this provision it was carving out only a narrow exception to the general rule by explicitly stating that it was doing nothing to alter the court's authority in civil-contempt proceedings.[10]

### D.

Finally, the defendants argue that Kennedy cannot now challenge their jury demand because, according to the defendants, Kennedy herself demanded a jury trial in this action and "the demand cannot be withdrawn without the consent of all parties."[11] Fed.R.Civ.P. 38(d). The defendants' argument is unsupportable.

■ First, the defendants err when they state that Kennedy demanded a jury trial in this action. The defendants filed a motion for the court to take judicial notice of Faulkner State Community College's compliance with the *Shuford* decrees' institutional goals.[12] In a response in opposition to the defendant's motion, Kennedy asserted that the court, "having placed this case on a jury docket," would violate the "plaintiffs' constitutional right to a jury trial" if it takes judicial notice of a disputable fact.[13] Contrary to the defendants' assertion, Kennedy's statement was not a written demand for a jury trial, and the court will not construe it as such. Fur-

thermore, even if Kennedy's statement could be construed as a jury demand, the defendants would still not be entitled to a jury trial on the pending matters. The court, of its own initiative, may find that entitlement to a jury trial does not exist, *see* Fed.R.Civ.P. 39(a), and the court has so found here.

Accordingly, for the foregoing reasons, it is ORDERED that plaintiffs' motions to strike the defendants' jury demand, filed on February 9 and June 16, 1999 (Doc. nos. 825 and 868), are granted and the defendants' demands for jury trials in this litigation are struck.

---

10. In the Civil Rights Act of 1957, Congress enacted a similar provision that created an exception to the court's inherent authority to adjudicate criminal contempts. In what is now codified at 42 U.S.C.A. § 1995, Congress provided that any party found to be in criminal contempt who the court determines should be punished by a fine in excess of $300 or imprisoned in excess of 45 days, shall have a right to a trial de novo before a jury. At the time of this Act's passage, as with § 2000h, jury trials in criminal contempt proceedings were not yet constitutionally required under any circumstances. And, similar to the provisions in § 2000h, Congress made clear its

intentions that it was creating a narrow exception to a court's authority to issue contempts that in no manner was intended to limit the court's dominion in civil contempt proceedings.

11. Defendants' supplemental brief in support of demand for a trial by jury, filed March 9, 1999, at 5 (Doc. no. 837).

12. Defendants' motion to take judicial notice, filed November 2, 1998 (Doc. no. 771).

13. Document No. 792, filed December 18, 1998, at 4 n. 4.