920 A.2d 1243 (2007)
392 N.J. Super. 448
Maria TODARO, Plaintiff-Appellant,
v.
COUNTY OF UNION and Harold Gibson, Defendants-Respondents, and
George W. Devanney, Defendant.
Superior Court of New Jersey, Appellate Division.
Argued December 13, 2006.
Decided April 19, 2007.
*1245 David F. Corrigan, argued the cause for appellant.
Frank G. Capece, argued the cause for respondents (Garrubbo, Capece & Millman, attorneys; Mr. Capece, of counsel; James J. Seaman, on the brief).
Before Judges LEFELT, PARRILLO and SAPP-PETERSON.
The opinion of the court was delivered by
SAPP-PETERSON, J.A.D.
Plaintiff Maria Todaro appeals the post-trial order entered on September 23, 2005, denying her application for instatement to the position of Superintendent of Weights and Measures (Superintendent), County of Union (County), after a jury returned a verdict in her favor finding that plaintiff's political affiliation was the reason she was not originally promoted to the position. Because we conclude the record is inadequate to support the trial court's conclusion that instatement was not the appropriate remedy and because we also conclude that the rightful place remedy *1246 fashioned by the court fails to make her whole, as required under 42 U.S.C. § 1983, we reverse and remand for further proceedings.
The salient facts presented to the jury are as follows. Plaintiff is an Assistant Superintendent of Weights and Measures, having held this classified civil service position since 1993. At the time of her appointment, there was one other Assistant Superintendent, Joseph Freitas. In 1998, Michael Florio passed the civil service examination and was also hired as an Assistant Superintendent. Plaintiff is a republican. Florio is a democrat and the son of a prominent Union County democrat. All three Assistants reported to the Superintendent, Thomas Karamus, who answered to Harold Gibson, the Director of Public Safety.
In 2002, Superintendent Karamus retired. Since his position was classified, prospective candidates were required to undergo a civil service examination. Plaintiff and the other two Assistant Superintendents took the exam. Freitas achieved the number one ranking on the test, while plaintiff finished second. Florio ranked third, scoring 2.33 points less than plaintiff.
After plaintiff began hearing rumors that the decision would be made based on political affiliation, she started contacting various people, including Gibson, who met with her but refused to provide any assurance that political affiliation would not be determinative. Florio bragged to Freitas about his father's political influence and that he was going to be appointed to the position. When plaintiff received notice that Florio had been appointed as Superintendent, she filed a six-count complaint against the County, Gibson, and George Devanney,[1] the County Manager, alleging political discrimination, in violation of 42 U.S.C. § 1983 (§ 1983) (Count One); age, sex, and national origin discrimination, in violation of the New Jersey Law Against Discrimination (NJLAD), N.J.S.A. 10:5-1 to -42 (Counts Two, Three and Four); violation of public policy of the State of New Jersey (Count Five); and intentional infliction of emotional distress (Count Six).
Before submitting the case to the jury, plaintiff voluntarily dismissed all counts in the complaint except her claim of political discrimination. The jury returned a verdict in her favor, answering "yes" to a special interrogatory that asked whether defendants denied the position to plaintiff based solely upon her lack of affiliation with the Democratic Party, contrary to § 1983. The jury awarded plaintiff $350,000 in compensatory damages and $28,000 in back pay. The jury also found that plaintiff was entitled to punitive damages.
Prior to the hearing on punitive damages, the parties entered into a settlement agreement that included the following provision:
This settlement resolves all of the issues arising out of the lawsuit except for the injunctive relief as follows. Ms. Todaro may apply for injunctive relief, in light of the jury verdict and Ms. Todaro's status as the prevailing party in this matter, in the form of instatement/promotion to the position of Superintendent of Weights and Measures, and/or "front Pay" or salary increase, days off identical to that granted to Florio, pension benefits and other benefits granted to Florio. . . . In short, this injunctive relief application shall be considered on the merits in light of the jury verdict and nothing in this partial settlement shall operate as a waiver of any rights *1247 Todaro would have had or currently does possess otherwise. . . . All parties retain any and all appeal rights with respect to this application motion only.
Pursuant to the agreement, plaintiff moved for instatement as Superintendent, pay and vacation differential, pension benefits and counsel fees, or, alternatively, front pay.
On the return date of the motion, the court, based solely upon the submissions of the parties, issued an oral decision determining that neither instatement nor front pay were appropriate equitable remedies. Specifically, the court found that instatement, although the preferred equitable remedy for § 1983 promotion violations, was inappropriate because the position had been filled by Florio, a non-party in the underlying litigation who the court concluded would be substantially harmed if removed or demoted from the position. Further, relying upon Feldman v. Philadelphia Hous. Auth., 43 F.3d 823, 833 (3d Cir.1994), the court refused to award front pay as an alternative to instatement because plaintiff failed to present any evidence related to front pay during the trial.
Having rejected instatement and front pay, the court next considered the "rightful place" remedy. This form of equitable relief requires that the wronged employee, in this case plaintiff, await the next comparable job opening and, while doing so, receive compensation at the salary the employee would have earned but for the illegal discrimination. Granziel v. City of Plainfield, 279 N.J.Super. 104, 108-09, 652 A.2d 227 (App.Div.), remanded on other grounds 142 N.J. 513, 665 A.2d 1106 (1995). The court concluded that "under the present circumstances, the rightful place[] theory in lieu of bumping or front pay is the appropriate remedy." The court ordered that "plaintiff's wages and pension benefits shall be elevated to the levels of compensation and benefits received by the Superintendent of Weights and Measures, subject only to any consideration of plaintiff's time of service and/or seniority." The present appeal followed.

I.
We first address the standard governing our review of the trial court's order. Plaintiff contends that our review is plenary, without any deference due to the trial court's legal conclusions, because the jury resolved the question of the lawfulness of defendants' appointment process and the court thereafter fashioned its equitable remedy simply by making a legal determination. On the other hand, defendants contend the standard of review is to determine whether there is sufficient credible evidence in the record to support the court's factual conclusion that Florio was an innocent non-party and that he would be substantially harmed if removed or demoted from the position.
In our view, our task is to determine whether the court properly exercised its discretion in fashioning the appropriate equitable remedy. This involves consideration of both the applicable legal principles and the sufficiency of facts the court relied upon in ordering the "rightful place" remedy. See Hoots v. Pennsylvania, 703 F.2d 722, 725 (3d Cir.1983). Thus, we accept the ultimate factual determination of the trial court "unless that determination either is completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data." Ibid. In other words, the trial court's fashioning of the appropriate equitable remedy is committed to the exercise of its sound discretion, an analytical framework that "does not differ fundamentally from other cases involving the framing of equitable *1248 remedies to repair the denial of a constitutional right." Evans v. Buchanan, 555 F.2d 373, 378 (3d Cir.) (quoting Swann v. Charlotte-Mecklenburg Bd. of Educ., 402 U.S. 1, 15-16, 91 S.Ct. 1267, 1276, 28 L.Ed.2d 554, 566 (1971)), cert. denied, 434 U.S. 880, 98 S.Ct. 235, 54 L.Ed.2d 160 (1977). An improper exercise of discretion exists only where "judicial action is arbitrary, fanciful, or unreasonable, or when improper standards, criteria, or procedures are used." Ibid.

II.
This case arises under 42 U.S.C. § 1983, which provides,
Every person, who under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]
[42 U.S.C.A. § 1983.]
"Section 1983 was designed to provide a comprehensive remedy for the deprivation of federal constitutional and statutory rights." Gurmankin v. Costanzo, 626 F.2d 1115, 1122 (3d Cir.1980), cert. denied, 450 U.S. 923, 101 S.Ct. 1375, 67 L.Ed.2d 352 (1981). The relief available under the statute for violations includes equitable remedies, ibid., with the overarching goal to make victims of illegal discrimination whole. Squires v. Bonser, 54 F.3d 168, 171 (3d Cir.1995). To that end, the make-whole standard of relief should be the touchstone of relief fashioned by the courts. See Franks v. Bowman Transp. Co., Inc., 424 U.S. 747, 763-64, 96 S.Ct. 1251, 1263-64, 47 L.Ed.2d 444, 461 (1976).
Plaintiff contends the trial judge's sole reason for denying her instatement to the position was because this remedy would result in Florio's displacement, who the judge found was an innocent beneficiary of defendants' illegal conduct. Plaintiff argues that Florio was complicit in the defendants' conduct, pointing to testimony elicited during the trial from Freitas that Florio told Freitas that Florio's father spoke to a key political figure in the County, who assured his father that Florio would be the next Superintendent, and that the senior Florio also told his son that Todaro did not have a chance. Freitas testified further that Florio stated Todaro did not campaign for the Democratic Party in the County and therefore did not deserve the position.
No reported New Jersey decision has squarely addressed instatement as a remedy where a public employee has been denied appointment to a classified civil service position solely on the basis of political affiliation. However, instatement as an equitable remedy for illegal discrimination contrary to Title VII and § 1983 has been addressed in the federal courts. Therefore, we look to federal decisions for assistance, recognizing that our courts have frequently turned to federal courts for direction in interpreting anti-discrimination laws. See, e.g., Grigoletti v. Ortho Pharm. Corp., 118 N.J. 89, 97, 570 A.2d 903 (1990) (citing Shaner v. Horizon Bancorp, 116 N.J. 433, 437, 561 A.2d 1130 (1989) ("approving of the use of `federal anti-discrimination statutes' in general, and Title VII in particular, when interpreting the LAD in an age-discrimination case")); Borngesser v. Jersey Shore Med. Ctr., 340 N.J.Super. 369, 380, 774 A.2d 615 (App.Div.2001); see also Squires, supra, 54 F.3d at 172 (stating that the "framework of analysis governing reinstatement in Title VII actions also governs in Section 1983 actions").
*1249 "The equitable remedy of ordering promotion to a position illegally denied is referred to as `instatement.'" Bullen v. Chaffinch, 336 F.Supp.2d 357, 358-59 (D.Del.2004) (citing Julian v. City of Houston, 314 F.3d 721, 728 (5th Cir.2002); Kennedy v. Ala. State Bd. of Educ., 78 F.Supp.2d 1246, 1249 (M.D.Ala.2000)). Because it is an equitable remedy, the starting point in considering whether the trial court mistakenly exercised its discretion in not ordering instatement is the admonition of the United States Supreme Court in Franks, supra. There, the Court held that in fashioning equitable relief, albeit under Title VII, courts are obligated to grant "the most complete relief possible." Franks, supra, 424 U.S. at 764, 96 S.Ct. 1251.
Instatement mirrors the law of reinstatement. See Bullen, supra, 336 F.Supp.2d at 359. Its purpose is to make victims of discrimination whole by restoring them to the economic position they would have occupied but for the illegal conduct of their employer. Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1103 (3d Cir.1995). Instatement is recognized as the preferred, albeit not exclusive, remedy to "cover the loss of future earnings." Feldman, supra, 43 F.3d at 831 (citing Blum v. Witco Chem. Corp., 829 F.2d 367, 373-74 (3d Cir.1987)). As the court noted in Allen v. Autauqa County Bd. of Educ., 685 F.2d 1302, 1306 (11th Cir.1982),
When a person loses his job, it is at best disingenuous to say that money damages can suffice to make that person whole. The psychological benefits of work are intangible, yet they are real and cannot be ignored. . . . We also note that [instatement] is an effective deterrent in preventing employer retaliation against employees who exercise their constitutional rights.
[Ibid.]
Therefore, a court should grant instatement unless there are "special circumstances" which justify its denial. Squires, supra, 54 F.3d at 174; see also Bennun v. Rutgers, 737 F.Supp. 1393 (D.N.J.1990), cert. denied, 502 U.S. 1066, 112 S.Ct. 956, 117 L.Ed.2d 124 (1992); Sprogis v. United Air Lines, Inc., 444 F.2d 1194 (7th Cir. 1971), cert. denied, 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971).
There is no clear litmus test for what constitutes special circumstances sufficient to militate against instatement. The federal circuit courts are split between those that insist that incumbent employees should be "bumped" to make room for the job's rightful holder and those that believe the discriminatee should await a job opening, the so-called "rightful place" method. See Lander v. Lujan, 888 F.2d 153, 157 (D.C.Cir.1989) (adopting "bumping" in Title VII case); Brewer v. Muscle Shoals Bd. of Educ., 790 F.2d 1515, 1523-24 (11th Cir.1986) (adopting bumping in promotion context and finding that incumbent employee would merely be transferred to another position); Sterzing v. Fort Bend Indep. Sch. Dist., 496 F.2d 92, 93 (5th Cir. 1974) (holding relief granted for violation of constitutional rights "is not restricted to that which would be pleasing and free of irritation"); but see Spagnuolo v. Whirlpool Corp., 717 F.2d 114 (4th Cir.1983) (rejecting "bumping" in favor of "rightful place" method); Patterson v. Am. Tobacco Co., 535 F.2d 257 (4th Cir.), cert. denied, 429 U.S. 920, 97 S.Ct. 314, 50 L.Ed.2d 286, 429 U.S. 920, 97 S.Ct. 315, 50 L.Ed.2d 286 (1976).
What emerges from these cases is that each case is fact sensitive and must be analyzed on a case-by-case basis in order to fashion the appropriate remedy. Bullen, supra, 336 F.Supp.2d at 359. Among the factors a court should consider are (1) *1250 the need to make the aggrieved party whole, Squires, supra, 54 F.3d at 172; (2) whether there is irreparable animosity between employee and employer, Blum, supra, 829 F.2d at 374; (3) the uniqueness of the position and the availability of comparable positions, Hicks v. Dothan City Bd. of Educ., 814 F.Supp. 1044 (M.D.Ala.1993); (4) the effect of instatement on innocent third parties which may be disrupted by instatement, Kraemer v. Franklin & Marshall College, 941 F.Supp. 479, 483 (E.D.Pa.1996); (5) the availability of a replacement position for the displaced employee, Starceski, supra, 54 F.3d at 1103; (6) whether an alternative position is available for the prevailing plaintiff, ibid.; and (7) the need to deter employers from engaging in unconstitutional conduct, Squires, supra, 54 F.3d at 172. "No one of these factors is necessarily determinative, and indeed, not all of the factors will always be relevant. These are instead some of the major factors a court may consider in deciding whether to bump an incumbent in order to provide full relief to a successful plaintiff." Hicks, supra, 814 F.Supp. at 1050-51.
In the present matter, the court considered factors similar to those considered by the court in Bullen, supra:
[F]irst there was no evidence presented at trial that any animosity existed between plaintiff and Florio, the person who now holds the position sought. So that factor does not appear to be applicable here.
. . . .
[T]he position of Superintendent of Weights and Measures is currently filled by Michael Florio.
. . . .
[Plaintiff] did not file an affirmative claim against Mr. Florio.
. . . .
Florio, a non-party to this action[,] would clearly be substantially harmed if he's removed from this position, [or] alternatively[,] demoted[.]
While these are appropriate factors to consider, we believe the court, in primarily relying upon Bullen, overlooked a critical distinction.
In Bullen, a jury found that plaintiffs, white Delaware state troopers, were denied promotion to sergeants because they were white. The court ordered a rightful place remedy rather than instatement because the record revealed that "promotions at the [Delaware State Police] [were] made on a regular basis, including on an individual basis when warranted, and that the [Delaware State Police] [had] flexibility with regard to its placement of officers." 336 F.Supp.2d at 362. Of even greater significance was the fact that the plaintiffs were willing to wait for the next available sergeants' positions. Id. at 361. Here, as plaintiff points out, there is only one Superintendent of Weights and Measures for the County, making the position unique. If there is only one position available or comparable positions do not exist, the uniqueness of the position becomes an important factor in fashioning the appropriate equitable remedy. Walters v. City of Atlanta, 803 F.2d 1135, 1150 (11th Cir. 1986). Under such circumstances, displacement of the incumbent may be compelling if a plaintiff is ever to be made whole. Id. at 1149-50.
Additionally, in finding that Florio was an innocent party, the court relied solely upon the fact that Florio was not a named party in the lawsuit. While that is an appropriate consideration, an innocent party, for purposes of determining whether instatement is feasible, should not be measured simply in terms of who is a named party to the underlying action. Consideration of other factors was also *1251 warranted, including whether Florio was in any way involved in the wrongful act leading to his appointment over plaintiff and whether Florio knew or should have known whether plaintiff's appointment to the position should have occurred in the first place. Hicks, supra, 814 F.Supp. at 1051. Also, the court should have considered how long Florio had held the position, what if any rearrangement of business and personal affairs he experienced as a result of the appointment, and whether, in the event he is bumped, defendants are in a position to minimize the harm to him with a lateral move or other remedy. Ibid.
Here, there was evidence presented during the trial of Florio's alleged involvement. The court made no findings of fact relative to that evidence, nor did the court explain how it arrived at the conclusion that Florio would be "substantially harmed" if removed or demoted from the position. Moreover, even assuming Florio is an "innocent party" currently filling the position, that does not vest him with a greater entitlement to the position than plaintiff, the victim of illegal discrimination. As the court noted in Jackson v. City of Albuquerque, 890 F.2d 225, 233-34 (10th Cir.1989) (quoting Sterzing, supra, 496 F.2d at 93),
If the existence of a replacement constituted a complete defense against reinstatement, then reinstatement could be effectively blocked in every case merely by hiring an innocent third party after the retaliatory purpose was achieved. Thus, the deterrent effect of the remedy of reinstatement would be rendered a nullity. . . . While reinstatement may displace an innocent employee, the "(enforcement) of constitutional rights (may have) disturbing consequences. Relief is not restricted to that which would be pleasing and free of irritation."
[Jackson, supra, 890 F.2d at 233-34.]
Likewise, in Lander, supra, the court reasoned,
[W]e see no indication in the statute nor in logic to lead us to conclude that ordinarily the innocent beneficiary has a superior equitable claim to the job vis-a-vis the victim of discrimination. Therefore, if the district court must choose between the two, we do not see how the court can be reversed for choosing complete relief for the victim. In any event, the Fourth Circuit's approach [of rightful place] seems more suited to a situation where vacancies in the relevant jobs appear rather frequently, but not to a case such as ours where there is really only one top administrative job in the Bureau.

[888 F.2d at 157-58. (emphasis added)]
That is precisely the situation here. There is but one position as Superintendent of Weights and Measures. Thus, instatement of plaintiff should have been viewed as it was in Lander, supra, as a priority, even at the expense of the incumbent employee. Further, instatement is particularly appropriate "within the civil service system, where displaced incumbents presumably are assured reassignment." Lander, supra, 888 F.2d at 157, quoted in Granziel, supra, 279 N.J.Super. at 110, 652 A.2d 227.
We are persuaded the court reached its decision that instatement was inappropriate without considering all of the relevant factors and also without sufficient fact-finding to support its conclusion. Therefore, on this record, the court mistakenly exercised its discretion in ordering the rightful place remedy. Evans, supra, 555 F.2d at 378.
Additionally, in fashioning the rightful place remedy, the court made plaintiff whole as of September 2005 but failed to include a remedy going forward that would ensure continued economic parity with Florio until a comparable position was *1252 made available to her. In her concurring opinion in Lander, supra, then Circuit Judge Ruth Bader Ginsburg observed,
[T]he "rightful place" approach, when coupled with a "front pay" award, is sometimes the more appropriate remedy. Under this approach, which has been used routinely for lower or middle-level jobs, the victim of discrimination receives the next available vacancy or promotion but while waiting, is paid at the higher level.
[Lander, supra, 888 F.2d at 159.]
Judge Ginsburg agreed that instatement was the appropriate remedy in Lander because, "[a]s distinct from instances in which the rightful place approach has been most fruitfully applied, this case involves a unique, top-level job, one for which no equivalent vacancy could be projected" and the displaced employee was not dismissed or discharged but instead reassigned to another senior executive service post. Ibid.
Defendants recognize that the court's remedy fell short of making plaintiff whole. In their brief and at oral argument, defendants proposed tying plaintiff's raises to those of the union rather than to Florio's because tying plaintiff's salary increases to Florio's raises would inhibit the County in approving raises for Florio, who is no longer a member of the union and whose salary is based upon merit. "A [court's] discrimination remedy cannot turn on the employer's preferences," id. at 158, particularly when, "after all, the employer's intentional discrimination created the disturbance by harming the plaintiff." Ibid.
Thus, we remand to the trial court to conduct further fact-finding. This fact-finding should not only address instatement but also the alternative remedy of front pay. We express no view as to whether instatement or front pay is the more appropriate remedy.
The court concluded that plaintiff's failure to present any evidence of front pay during trial precluded an award of front pay as a form of equitable relief. See Feldman, supra, 43 F.3d at 833 (upholding the jury award of front pay because it was supported by evidence). We agree that once a court determines that front pay is appropriate, ordinarily a jury will determine the amount. Blum, supra, 829 F.2d at 372. In this matter, however, the parties reached a post-trial settlement that called for the court to consider whether plaintiff should receive front pay. We presume that at the time the parties reached the settlement, they were aware that the issue of front pay had not been addressed during the trial, but nonetheless agreed that this form of relief was an appropriate alternative to instatement. See Pollard v. E.I. du Pont de Nemours & Co., 532 U.S. 843, 846, 121 S.Ct. 1946, 1948, 150 L.Ed.2d 62, 67 (2001) (noting front pay is ordered in those cases where "[instatement] is not viable") (citing Gotthardt v. Nat'l R.R. Passenger Corp., 191 F.3d 1148, 1156 (9th Cir.1999); Fitzgerald v. Sirloin Stockade, Inc., 624 F.2d 945, 957 (10th Cir.1980)).
Plaintiff, in her original motion seeking front pay as an alternative to instatement, should have requested the opportunity to develop the record on this point. The court, upon receipt of such a motion, would have allowed the additional evidence to be submitted. Therefore, upon remand, the court shall invite the parties to supplement the record on this issue as necessary. See Grasso v. Borough of Spring Lake Heights, 375 N.J.Super. 41, 55, 866 A.2d 988 (App.Div.2004).
Reversed and remanded for further proceedings consistent with this opinion.
NOTES
[1] Plaintiff voluntarily dismissed her claims against George Devanney during trial.