**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0200-22

MICHAEL A. URSITTI and
LISA A. COSCIA,

      Plaintiffs-Appellants,

v.

JAMES H. WILSON, CHRISTINA
WILSON, EQUIHEART
VETERINARY SERVICES, LLC,
and EQUIHEART FARMS, LLC,
THE TOWNSHIP OF WASHINGTON,
a municipal corporation, THE
TOWNSHIP OF WASHINGTON
ZONING BOARD OF ADJUSTMENT,
a land use agency of the TOWNSHIP
OF WASHINGTON, and

      Defendants-Respondents,

and

THE TOWNSHIP
OF WASHINGTON BOARD
OF EDUCATION,

      Defendant.

_____

Argued January 9, 2024 – Decided February 8, 2024

Before Judges Whipple, Enright and Paganelli.

On appeal from the Superior Court of New Jersey, Chancery Division, General Equity, Hunterdon County, Docket No. C-014017-20.

Erica Lynn Edwards argued the cause for appellants (Erica Edwards, Esq. Law Offices, LLC, attorney; Erica Lynn Edwards, on the brief).

Gerald J. Kelly argued the cause for respondents James H. Wilson, Christina Wilson, Equiheart Veterinary Services, LLC, and Equiheart Farms, LLC.

PER CURIAM

Michael A. Rusti and Lisa A Coscia (collectively, plaintiffs) and James H. Wilson and Christina Wilson (collectively, defendants) have been neighbors for over five years. During that time, defendants have had use of a driveway on an access easement on plaintiffs' property, plaintiffs have objected to the manner in which the driveway was used, and defendants have objected to plaintiffs' increasingly intrusive and intimidating behavior. As a result, the relationship between the neighbors has deteriorated over the years.

On appeal, plaintiffs challenge the trial judge's determination that their use of cameras and a radar speed detector to monitor the easement constitutes a private nuisance. Judge Margaret Goodzeit, Chancery Division, oversaw this

case at the trial level, issued extensive findings of fact and legal conclusions after a three-day bench trial, and fashioned an equitable remedy. Based upon her findings and legal reasoning, we agree with her decision and affirm.

Below, we briefly recount the essential facts, relevant to this issue. Plaintiffs have lived at and owned the property at 14 Coddington Lane, Tewksbury, since the residence was built in 1998. Defendants purchased and moved into the property at 16 Coddington Lane, Washington Township, in 2017. Defendants also have certain businesses associated with their farm activities and veterinary practice, which operate out of the property under a farmland assessment and an accessory use home occupation approval.

Despite being in a different municipality and different county, [1] defendants' property is adjacent to, and behind, plaintiffs' property. Defendants' property would be landlocked and inaccessible, but for an easement that was memorialized in an agreement filed in 1998. By agreement, plaintiffs' property is encumbered by an access easement, measuring approximately 530' long by 30' wide, to the benefit of defendants' property. The access easement agreement grants to defendants, as successors in the estate from the original Grantees:

---

[1] 14 Coddington Lane is in Tewksbury, Hunterdon County. 16 Coddington Lane is in Washington Township, Morris County.

A-0200-22

1.  [A]n exclusive access easement over that portion of the Property [at 14 Coddington Lane] . . . (the "Easement Area") . . . , which includes the Driveway, only for the purpose of providing ingress and egress from Coddington Lane to [16 Coddington Lane].

2.  The easement created hereby shall be subject to the following:

(a)  Existing rights and easements, including, but not limited to, those for access, drainage, utilities, water and sewer mains, pipelines and telephone lines located in the Easement Area.

When they purchased their property, plaintiffs installed a home security system that included panic alarm buttons registered with, and continually monitored by, the Tewksbury Township Police. Their system also includes heat detectors, water breach devices, and other security measures. In 2019, plaintiffs became suspicious about damage to their rear fence and installed a camera to surveil the fence. The camera was attached to a tree in the wooded backyard, approximately sixty feet from defendants' residence and was housed in a birdhouse casing. Plaintiffs deny any intention to surveil defendants' residence and assert the camera was placed in the birdhouse to protect it from the elements, as it was designed for indoor use.

Defendants thought the camera was placed surreptitiously and made two reports to the police about it. Plaintiffs removed this birdhouse camera a short

A-0200-22

time later. In 2019, plaintiffs installed other cameras on their property to monitor their backdoor, gate, mailbox, driveway, and an office area. One camera looked in the direction of their car parking pad and viewed a portion of the easement beyond the parking pad. Plaintiffs also installed two cameras on a pole adjacent to the easement for presence detection for the length of the easement and real-time video. One faces south toward the road, and one faces north toward defendants' home. Defendants' residence is not within the sightline of the easement cameras.

Plaintiffs later upgraded their outdoor cameras to consistently transmitting infrared cameras with nighttime capability, installing five of them in late November and December 2020. They did not install any cameras facing defendants' property. The camera from the birdhouse was installed to monitor the wires on the two infrared cameras near the easement. At trial, plaintiff-husband explained that he monitored those wires because they could be cut by a perpetrator or squirrels. He stated that this camera has audio capability but denied that such monitoring was enabled. Plaintiffs testified at trial that they were concerned about confrontations and potential incidents on the easement, and they increased their security monitoring to protect themselves.

A-0200-22

Plaintiffs asserted that, since defendants moved in and began operating their businesses from 16 Coddington Lane, traffic volume on the easement increased and the character of the vehicles using the easement changed to include more commercial and delivery vehicles, as well as heavier vehicles with trailers. They also claimed that it is common for vehicles to travel at "excessive speeds" on the easement. Plaintiffs asserted these negative changes in the traffic using the driveway impacted their use and enjoyment—as well as the potential resale value—of their property.

Plaintiff-husband testified he observed on the driveway vehicles travelling at speeds plaintiffs "thought . . . were not appropriate." Plaintiffs voiced their concerns to defendants in casual conversation and text messages, but purportedly witnessed no change in the driving behavior. Beginning in late 2019, plaintiffs also began reaching out to the U.S. Postal Service, FedEx, and UPS to complain about the speeds driven by their delivery drivers on the easement, again with no appreciable change in behavior. In June 2020, plaintiff-husband also stopped various delivery drivers—as well as defendants—as they were on the driveway and asked them to drive more slowly.

6

In August 2020, while defendants were away on vacation, plaintiffs installed on the driveway four speed bumps and ten signs—stating, "Speed Bumps"; the defendants discovered this installation upon their return home. The number was later increased to six speed bumps. Earlier that summer, in July 2020, plaintiffs had ordered the installation of "No dumping" signs by the property line between plaintiffs' property and defendants' house and the installation of "Private property/No trespassing" signs on plaintiffs' property at the end of the easement, with all signs pointing toward defendants' property. "No parking" signs were placed on the other side of the easement, facing the driveway. These signs were installed by plaintiffs in response to a March 2020 letter from defendants' counsel that asserted plaintiffs would be considered trespassing if they entered the easement.

In November 2021, plaintiffs installed a radar device to monitor the speed of vehicles travelling on the easement. Plaintiff-husband testified he could then cross-reference "fast" radar readings with images from his video feed from the easement to determine whether the reading was from a delivery vehicle or a private car. Plaintiff-husband kept a log of such readings and vehicles for about six weeks after installing the radar device to present evidence to various delivery companies.

A-0200-22

At trial, plaintiff-wife testified that her home had been "a sanctuary" before defendants moved in, but that it was "not a pleasant place to live anymore." Plaintiff-wife stated that she was "angry" and "heartbroken" and that she disapproved of defendants' running businesses on their property. She complained of noisy animals and too much traffic on the easement. She recounted her numerous failed attempts through Washington Township to obtain relief against the defendants' commercial activities, including opposing permits sought by the defendants, although they were within the zoned use of the property. Plaintiff-wife testified plaintiffs had asked other neighbors to likewise oppose defendants' permit requests. Plaintiffs had also sought to relocate the school bus stop utilized by defendants' children away from the end of their driveway to a location approximately half a mile away.

At trial, defendants testified they felt their privacy had been invaded by the cameras monitoring the easement area. Specifically, defendants related the oppressive effect the surveillance had on family members and visitors. They were uncomfortable with the constant monitoring of their comings and goings—not only of visitors, but of defendants themselves and their children. Defendant-wife testified they told their children not to talk while walking on the easement because of the camera with audio recording capability. She also

8

emphasized that it felt "creepy" being constantly surveilled, especially since they had no knowledge how the captured images were being used. She further objected that plaintiffs' surveillance permitted them to know "exactly when [she] left in the mornings and exactly when [she] came home at night," as well as when her children "c[a]me off the bus and . . . walk[ed] up the driveway by themselves."

Defendants asserted plaintiffs' surveillance inappropriately interfered with their free use and enjoyment of the easement as guaranteed by the access easement agreement. Defendants testified they objected to the easement's being monitored at all, but they specifically took issue with the constant monitoring of vehicle speeds, as well as plaintiffs' stopping vehicles on the driveway. Defendants contended that the surveillance was intended to intimidate and interfere with their use and enjoyment of the easement, as well as the use by those visiting them.

Plaintiff-husband stated at trial that he was willing to post a "twenty-four-hour surveillance" sign to alert visitors that surveillance was running at

9

all times, and that he was willing to permit defendants to place a camera on the northwest corner of the easement, looking south down the driveway.[2]

Before the current litigation began, defendants' attorney sent a "cease and desist letter" to plaintiffs in March 2020, requesting plaintiffs refrain from interfering with defendants' rights to use the easement, specifically by not proceeding with their threat to install speed bumps across the driveway. Undeterred, plaintiffs installed the speed bumps and signs on the easement while defendants were away on vacation. In November 2020, defendants' attorney sent letters to plaintiffs' counsel demanding the immediate removal of the speed bumps or defendants would remove them themselves.

In response, plaintiffs filed an order to show cause for a preliminary injunction with temporary restraints and a verified complaint to prevent defendants from removing the speed bumps. Defendants countersued. The preliminary injunction was denied; defendants removed the speed bumps from the driveway and plaintiffs had the signs removed. Claims remained, however, and the disharmony between the neighbors continued.

---

[2] Defendants had once placed a camera, unwittingly on a different neighbor's property, near that area so they could monitor who was coming up the driveway toward their house. Defendants' camera was, ultimately, removed after the plaintiff admonished the neighbor by having his lawyer send a letter threatening litigation if the camera was not removed.

Defendants raised counterclaims sounding in nuisance and trespass. Plaintiffs added claims against new defendants—the Township of Washington, the Township of Washington Zoning Board of Adjustment, and the Township of Washington Board of Education. The trial court judge dismissed all claims against the public entity defendants on March 31, 2021. The remaining parties stipulated to the dismissal of one count of plaintiffs' second amended complaint. Defendants moved for summary judgment on the one remaining count and on their counterclaims, and plaintiffs cross-moved.

By order dated February 14, 2022, the trial judge granted summary judgment to defendants, dismissing plaintiffs' remaining count. By this same order, the trial judge granted, in part, summary judgment to plaintiffs, dismissing defendants' counterclaims for trespass and interference with use by circulating false information and filing incident reports.

Judge Goodzeit presided over a three-day non-jury trial on defendants' remaining nuisance claim and rendered a decision finding generally in defendants' favor. In the judgment, the trial court clarified maintenance obligations for both parties; defined circumstances permitting plaintiffs' presence in the easement area; addressed the removed speed bumps and various protrusions of plaintiffs' improvements into the easement area; and

required the removal of most signs facing defendants' property and removal of the speed detector and three cameras monitoring the easement area and each other.

This appeal followed in which plaintiffs appeal only the trial court's order to remove the speed detector and infrared cameras that surveil the driveway.

"[A] judge sitting in a court of equity has a broad range of discretion to fashion the appropriate remedy in order to vindicate a wrong consistent with principles of fairness, justice, and the law." Graziano v. Grant, 326 N.J. Super. 328, 342 (App. Div. 1999). We review an equitable remedy for an abuse of discretion, determining "whether the court properly exercised its discretion in fashioning the appropriate equitable remedy." Todaro v. Cnty. of Union, 392 N.J. Super. 448, 456 (App. Div. 2007).

Our review of a trial judge's findings is limited. See Fagliarone v. Twp. of N. Bergen, 78 N.J. Super. 154, 155 (App. Div.), certif. denied, 40 N.J. 221 (1963). We defer to the trial judge's factual findings that are well-supported by competent evidence in the record. See Brunson v. Affinity Fed. Credit Union, 199 N.J. 381, 397 (2009). However, we accord no deference to the trial judge's conclusions on issues of law and review such issues of law de

novo. State v. Smith, 212 N.J. 365, 387 (2012); Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, (1995); Pressler & Verniero, Current N.J. Court Rules, cmt. 3.1 on R. 2:10-2 (2024). We review mixed issues of law and fact de novo. In re Malone, 381 N.J. Super. 344, 349 (App. Div. 2005).

I.

Plaintiffs' chief argument is that the trial judge abused her discretion when she found plaintiffs' monitoring of the easement with cameras and a speed detector constitutes a private nuisance. Based upon the well-developed record, we disagree.

"A cause of action for private nuisance derives from [one party's] 'unreasonable interference with the use and enjoyment' of the [the other party's] property." Ross v. Lowitz, 222 N.J. 494, 505 (2015) (quoting Sans v. Ramsey Golf & Country Club, Inc. (Sans II), 29 N.J. 438, 448 (1959)). For a party to be liable for a private nuisance, that party's conduct must be the "legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either (a) intentional and unreasonable, or (b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or

13

activities." Restatement (Second) of Torts § 822 (Am. L. Inst. 1979); see also Ross, 222 N.J. at 505-06 (citing Burke v. Briggs, 239 N.J. Super 269, 272-73 (App. Div. 1990)) ("Our courts have adopted the standard of Restatement section 822 to assess liability for private nuisance.").

Our Supreme Court has acknowledged that the specific causes and symptoms of a private nuisance claim defy enumeration, Sans II, 29 N.J. at 448, and that the claim requires an individualized analysis, considering "the facts . . . in their totality," and a balancing of equities, id. at 450.

> The essence of a private nuisance is an unreasonable interference with the use and enjoyment of land. The elements are myriad. The law has never undertaken to define all of the possible sources of annoyance and discomfort which would justify such a finding. Litigation of this type usually deals with the conflicting interests of property owners and the question of the reasonableness of [one party's] mode of use of his land. The process of adjudication requires recognition of the reciprocal right of each owner to reasonable use, and a balancing of the conflicting interests. The utility of [one party's] conduct must be weighed against the quantum of harm to the [other]. The question is not simply whether a person is annoyed or disturbed, but whether the annoyance or disturbance arises from an unreasonable use of the neighbor's land or operation of his business.
>
> [Id. at 448–49 (internal citations omitted).]

Though it is not controlling, we appreciate the guidance offered by the

A-0200-22

Supreme Court of Vermont in <u>Jones v. Hart</u> "that a sustained and intentional campaign to annoy a neighbor can amount to a private nuisance." 261 A.3d 1126, 1140 (Vt. 2021). "Although such campaigns primarily involve only discomfort and annoyance—and therefore cause relatively little harm, as compared to other categories of interferences—they qualify as a private nuisance because the harassment and annoyance is repeated over a prolonged period and the activity causing the interference has no utility." <u>Ibid.</u>

Here, the trial judge began with a painstaking recitation of the facts, detailing the lengthy, contentious relationship between the parties. She found, not only that the actions plaintiffs took were an intentional and unreasonable invasion of defendants' private use and enjoyment of the driveway on the easement, but also that plaintiffs "have done everything in their power to make life difficult for . . . defendants." In particular, the judge found plaintiffs installed the cameras to monitor the easement because,

> as [plaintiff-husband] himself indicated, he wanted to know who was coming and going so he could report excessive speeds. He wanted to call the United States Post Office, UPS, FedEx, and perhaps anybody else to complain[]. He actually, indeed, started making a log of when they were there, and how fast he believed they were going.

15

The judge mentioned "how [defendants] felt and feel about being subjected to the surveillance" and the fact that defendants have "stopped talking, and told their children not to talk[,] while walking up and back the driveway." Judge Goodzeit said it was "very telling" and "unfathomable" that defendants felt such discomfort traversing the one means of reaching their home. Moreover, the trial judge stated, it was "inappropriate" that defendants' "invitees, delivery people, have been stopped" and that "one of the [delivery] services won't come down the driveway." Finally, the trial judge found that the speed detector had been recently installed "for the same exact reasons."

Based on these findings, the trial court then held that plaintiffs "have gone beyond their rights with respect to the ground of the easement." "[P]utting surveillance cameras for [their] own gratification, and whatever underlying complaints they intend to file, is inappropriate, and the [c]ourt finds[,] rises to the level of nuisance."

In so finding, Judge Goodzeit emphasized the fact that plaintiffs' issue with allegedly excessive speeds on the easement is based on "their personal belief[, and] . . . it is not supported by any law." Plaintiffs have not

> established that anybody has driven in excessive speed according to any standard. [They have] had no expert provide a standard. [They have] provided no laws or ordinances that apply to this driveway. It is just their

16

> subjective desire to keep people at under [ten] miles an hour, and [that is] not enough.

Plaintiffs' actions to enforce a subjective speed limit were legally unreasonable, as there is no legal support for their opinion that "driving on the easement access driveway should be limited to a speed of [ten] miles per hour." As a result, the judge found "that the surveillance and the speed detectors are intimidating to [defendants] and their guests and invitees, and [plaintiffs] have no legal justification for same."

The determination that plaintiffs' cameras and speed detector constitute a private nuisance to defendants, infringing on defendants' reasonable use and enjoyment of the driveway on the easement, is well within the judge's discretion. Her decision did not "rest[] on an impermissible basis, consider[] irrelevant or inappropriate factors, fail[] to consider controlling legal principles or ma[k]e findings inconsistent with or unsupported by competent evidence." See Elrom v. Elrom, 439 N.J. Super. 424, 434 (App. Div. 2015). The trial court judge's decision rested on the totality of the circumstances, as is appropriate for considering a private nuisance claim. See Sans II, 29 N.J. at 450. The trial judge considered only appropriate factors and controlling legal principles, ignoring extraneous interactions between the parties that were not relevant to the use of the easement and referring to controlling case law,

17

including <u>Ross v. Lowitz</u>, 222 N.J. 494 (2015), and <u>Sans II</u>, 29 N.J. 438 (1959). Finally, every factual finding the judge made was derived directly from party testimony offered during the three-day bench trial.

Plaintiffs argue the cameras and speed detector at issue should be permitted to remain in place, because they "do not interfere with [d]efendants' exercise of their exclusive rights and responsibilities under the [a]ccess [e]asement [a]greement, namely, the right to travel the easement for the purpose of ingress to and egress from their property to the public street . . . ." Plaintiffs derive this non-interference argument from the laws that govern easements, under which the "owner of the burdened property retains the right to make all uses of the land that do not unreasonably interfere with the easement holder's exercise of the rights granted by the easement," citing <u>Restatement (Third) of Property: Servitudes</u> § 1.2 cmt. d and § 4.9 (Am. L. Inst. 2000). Plaintiffs also emphasize that "the [a]greement does not prohibit any form of monitoring of the easement by the fee simple owner of the lands."

The judge found that, by purchasing land encumbered by an easement, plaintiffs gave up the right to have absolute control over activities on the property included in the easement, "absent some proof of inappropriate behavior, which they have not provided." The judge held that, because

18

plaintiffs had not "established that the vehicles are in any way driving . . . at excessive speeds, or in other dangerous ways," taking steps to monitor or modulate the travel speed on the easement "is not within the rights that are granted by the express easement." Therefore, because the surveillance of the easement "is not within the rights that are granted by the express easement," plaintiffs "have no legal justification" for monitoring the driveway with cameras and a speed detector.

"An easement is an interest in land owned by another." Tewksbury Twp. v. Jersey Cent. Power & Light Co., 159 N.J. Super 44, 49 (App. Div. 1978), aff'd, 79 N.J. 398 (1979). An owner of the underlying land may not, "without the consent of the easement holder, unreasonably interfere with the latter's rights or change the character of the easement so as to make the use thereof significantly more difficult or burdensome." Tide-Water Pipe Co. v. Blair Holding Co., 42 N.J. 591, 604 (1964). On the other hand, with regard to the easement holder, "there is, arising out of every easement, an implied right to do what is reasonably necessary for its complete enjoyment, that right to be exercised, however, in such reasonable manner as to avoid unnecessary increases in the burden upon the landowner." Ibid.

A-0200-22

Looking to the easement agreement itself, it grants to defendants, as successors in the estate from the original Grantees:

> 1. [A]n exclusive access easement over that portion of the Property [at 14 Coddington Lane] . . . (the "Easement Area") . . . , which includes the Driveway, only for the purpose of providing ingress and egress from Coddington Lane to [16 Coddington Lane].
>
> 2. The easement created hereby shall be subject to the following:
>
> (a) Existing rights and easements, including, but not limited to, those for access, drainage, utilities, water and sewer mains, pipelines and telephone lines located in the Easement Area.

Importantly, under Tide-Water Pipe Co., the scope of rights held by the servient estate is not only defined by those reserved in the easement agreement, but the scope is also limited by the extent of rights held by the dominant estate. See 42 N.J. at 604. Under the terms of the easement agreement, any actions by plaintiffs that unreasonably interfere with defendants' use of the driveway for "ingress and egress from Coddington Lane to [16 Coddington Lane]" exceed plaintiffs' rights. The law of easements and the terms of the easement agreement do not extend the rights of plaintiffs to include perpetual monitoring of the easement when such monitoring interferes with defendants' use of the driveway, as the trial judge found here.

We stress that the trial court judge did not hold—nor do we—that plaintiffs have been divested of all rights to address activity that takes place on the easement. Instead, the trial court judge undertook a delicate and nuanced balance and carefully outlined that plaintiffs' ability to interfere with defendants' exclusive use of the easement—as provided for in the access easement agreement—is limited to only instances of activity that are legally established as inappropriate. Plaintiffs may not impose their opinions of propriety on others, even if they retain rights to the land included in the easement. Our ruling does not infringe on plaintiffs' rights to the easement; instead, it addresses the "reciprocal right of each owner to reasonable use, and a balancing of the conflicting interests," as is required under the laws controlling easements. See Sans II, 29 N.J. at 449.

We are not persuaded by plaintiffs' argument that, because the cameras and speed detector are not physically located on the easement and do not have a view of defendants' residence and "none of the cameras emit noise, exhibit flashing light, or move in such a way as would distract motorists traveling on the easement," then "the cameras do not interfere with [defendants'] exercise of their exclusive rights and responsibilities under the [a]ccess [e]asement [a]greement."

21

The trial court judge found measurable impacts on defendants from plaintiffs' monitoring of the easement with cameras and a speed detector. The trial judge also found plaintiffs' surveillance of the easement inappropriate in that it interfered with the willingness of delivery service drivers to travel up defendants' driveway to make deliveries. Because plaintiffs' surveillance made defendants and their invitees reluctant to fully utilize the driveway as they would if the surveillance was not occurring, the trial court judge found that plaintiffs' surveillance of the easement "unreasonably interferes with the use and enjoyment [by] the [defendants]."

When we determine whether a nuisance exists, "[t]he pertinent inquiry is whether [a] defendant's activities materially and unreasonably interfere with [a] plaintiff['s] comforts or existence, 'not according to exceptionally refined, uncommon, or luxurious habits of living, but according to the simple tastes and unaffected notions generally prevailing among plain people.'" Sans v. Ramsey Golf & Country Club, Inc. (Sans I), 50 N.J. Super. 127, 134–35 (App. Div. 1958), aff'd, 29 N.J. 438 (1959) (quoting Stevens v. Rockport Granite Co., 104 N.E. 371, 373 (Mass. 1914)). A judge will find that a party's activity unreasonably interferes with another party's use and enjoyment of their property when the "utility of the [offending party's] conduct" is outweighed by

22

the "quantum of harm to the [other party]." See Rose v. Chaikin, 187 N.J. Super. 210, 216 (Ch. Div. 1982) (citing Sans II, 29 N.J. at 449). Specifically, in Rose v. Chaikin, a Chancery Division judge emphasized that one's "ability to look to one's home as a refuge from the noise and stress associated with the outside world is a right to be jealously guarded." 187 N.J. Super. at 219. The Rose court found that, where "the benefits are relatively small and the irritation is substantial," a private nuisance exists. Ibid.

Similarly, in Sans II, our Supreme Court determined that the third tee of a golf course created a nuisance for a family living nearby, relying in part on the effect on that family of the almost constant presence of golfers outside their backyard. 29 N.J. at 445-50. To be sure, the Court also considered the physical threat that flying golf balls posed to the children of the family, but a large portion of the Court's opinion addressed the effects of the near-constant presence of golfers on the family's expectations of a "comfortable life in [their] home and the normal use of their property." Id. at 449. The Court noted that members of the family "have a consciousness that everything they say in or around the house can be heard out on the path and so they are 'under a constant strain and constant tension.' They 'never feel relaxed or free at home.'" Id. at 445. The Court further determined that "an even more serious objection

23

involves plaintiffs' children," in that they were forced to be quiet in their own backyard and their friends would not come over to play, due to their backyard's proximity to an active golf tee and the golfers' requirement for absolute quiet and stillness as they addressed the ball. Id. at 446-47. After balancing the reasonable preference of the golf course owner to maintain the tee placement to offer a desirable par 4 water-hole against the reasonable expectation of the family to enjoy their home as a restful haven, the Court then found that the family's "interests are paramount and demand reasonable protection." Id. at 450.

For a party to be liable for a private nuisance, that party's conduct must be the "legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either (a) intentional and unreasonable, or (b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities." Restatement (Second) of Torts § 822; see also Ross, 222 N.J. at 505-06. Under this framework, the "number of ways in which the manner of use of one's property can become so offensive to others as to warrant judicial relief, although not unlawful [p]er se, is manifold." Sans I, 50 N.J. Super. at 133. A party's activity unreasonably interferes with another

party's use and enjoyment of their property when the "utility of the [offending party's] conduct" is outweighed by the "quantum of harm to the [other party]." See Rose, 187 N.J. Super. at 216 (citing Sans II, 29 N.J. at 449).

Under the facts of this case, surveilling the easement with infrared cameras and a speed detector twenty-four hours a day, seven days a week, serves no utility. The trial judge found the surveillance was for plaintiffs' "own gratification" and was not based on any legally cognizable complaint, as "plaintiffs have not established their right to monitor the speed" on the easement. When weighed against its tangible effects on defendants—that is, reluctance on the part of themselves and their invitees to fully utilize their driveway due to intimidation—the balance of the equities clearly favors defendants, such that plaintiffs' conduct can be deemed unreasonable as a matter of law.

Plaintiffs argue defendants have no right to expect privacy in the easement and, therefore, "could not establish a prima facie case for invasion of privacy." Not only is a prima facie case for invasion of privacy not necessary to sustain a nuisance claim, but also defendants never relied on a claim of a right to privacy in advancing their nuisance claim.

We also note the court's imposition of a remedy was nuanced, measured,

25

and not overbroad. We review an equitable remedy for an abuse of discretion, determining "whether the court properly exercised its discretion in fashioning the appropriate equitable remedy." Todaro, 392 N.J. Super. at 456. In a nuisance claim, "any relief granted must result from a reasonable accommodation of [the conflicting] equities to each other in the light of" the totality of the circumstances. Sans II, 29 N.J. at 450. The relief granted here did just that.

Finally, "[t]he law does not concern itself with trifles, or seek to remedy all the petty annoyances of everyday life in a civilized community . . . ." W. Page Keeton et al., Prosser and Keeton on The Law of Torts § 88 (5th ed. 1984). As explained in the Restatement (Second) of Torts,

> Life in organized society and especially in populous communities involves an unavoidable clash of individual interests. Practically all human activities[,] unless carried on in a wilderness[,] interfere to some extent with others or involve some risk of interference, and these interferences range from mere trifling annoyances to serious harms. It is an obvious truth that each individual in a community must put up with a certain amount of annoyance, inconvenience[,] and interference and must take a certain amount of risk in order that all may get on together. The very existence of organized society depends upon the principle of "give and take, live and let live," and therefore the law of torts does not attempt to impose liability or shift the loss in every case in which one person's conduct has some detrimental effect on

another. Liability for damages is imposed in those cases in which the harm or risk to one is greater than [they] ought to be required to bear under the circumstances.

[§ 822 cmt. g (Am. L. Inst. 1979).]

Any remaining arguments raised by plaintiffs are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

27