**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1435-23

IN THE MATTER OF
JASON Y. LIABAN,
deceased.

_____

Submitted November 20, 2024 – Decided March 10, 2025

Before Judges Mayer and Puglisi.

On appeal from the Superior Court of New Jersey, Chancery Division, Passaic County, Docket No. P-229653-23.

Law Office of Barry E. Janay, PC, attorneys for appellant Maria Y. Liaban (Max Roseman, on the brief).

Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins, PC, attorneys for respondent Kriezl Liaban (Rubin M. Sinins and Francisco J. Rodriguez, on the brief).

PER CURIAM

Plaintiff Maria Y. Liaban, mother of decedent Jason Y. Liaban, appeals from the December 5, 2023 Chancery Division order dismissing her complaint against defendant Kriezl L. Liaban with prejudice. We affirm.

Jason,[1] a police sergeant, committed suicide on March 30, 2023, leaving behind his wife Kriezl, four minor children, parents and a brother. Jason died intestate and Kriezl, with whom he was estranged at the time of his death, was appointed administrator and administrator ad prosequendum of his estate.

Maria's complaint was grounded in her assertion that Kriezl caused Jason's suicide. Citing the couple's marital problems, Maria alleged Kriezl "willfully and knowingly inflicted excessive emotional distress to Jason in the last few days of his life to pursue her desire to separate from him which led to [his] suicide." She claimed Kriezl "bullied, tortured, [and] yelled at" Jason, threw him out of the marital home "every day," and refused to attend marriage counseling until she agreed to a session that occurred the evening before Jason's death.

Maria alleged that during the March 29, 2023 counseling session, Kriezl disclosed an extramarital affair and said "her decision was final." Shortly after the session, Jason sent Kriezl and his parents a text message with a suicide note and a photo of a gun. Jason's parents were unable to reach him by phone. A

---

[1] Because the parties share a common surname, we refer to them by their first names, with no disrespect intended.

captain from Jason's police department later located Jason and took him to the hospital for a psychological evaluation. Although the captain reported he patted Jason down for a weapon, Jason concealed his duty weapon on his person and shot himself while in the hospital.

Maria alleged Kriezl "was the only one who could have saved [Jason] had she tried to forget her demands for divorce at this crucial hour of Jason's life and made that very important compassionate call to try to save Jason's life." Maria further contended Kriezl's behaviors, including her new relationship, were not in the best interest of administering Jason's estate.

On those bases, Maria's pro se verified complaint and order to show cause sought to: (1) remove Kriezl as administrator ad prosequendum and administrator of Jason's estate; (2) replace Kriezl as administrator and administrator ad prosequendum; (3) find Kriezl "guilty of negligence" in Jason's death; (4) find Kriezl "guilty of w[a]nton disregard" for Jason's life, disqualify her from serving as administrator and enriching herself from Jason's death; (5) "equitably divid[e] the conjugal properties" and consider Jason's share as part of his estate; (6) provide lifetime relief to Maria, her husband, and other son for their pain and suffering and loss of companionship and support due to Jason's absence in their lives; and (7) provide other relief the court finds equitable,

giving Jason's "life and achievements[] the recognition and respect it deserves, especially by his children."  The court entered the order to show cause and set a return hearing date.  Kriezl filed counseled opposition.

During argument at the show cause hearing, Maria reiterated her position that Kriezl's actions caused Jason's suicide.  Kriezl's counsel argued against the requested relief and, although not plead in Maria's complaint, raised the Slayer statute:[2]

> [T]he only way Kriezl would not be entitled to the deceased's intestate property would be if she was actually criminally responsible, like murder or manslaughter for the decedent's death.  There are no such allegations relative to my client. . . .
>
> She's not been . . . the subject of a criminal investigation, nor has she received or [been] served a letter from the . . . Bergen County Prosecutor that she's being investigated in any way.

Kriezl's counsel also noted that under New Jersey's intestacy laws, Kriezl "would receive [one-hundred] percent of the estate and . . . would likely receive [one-hundred] percent of any lawsuit," referencing the possibility of bringing a lawsuit against the hospital, its staff and the police department.  Responding to the court's question whether the children would have a right to the proceeds of

---

[2]  The Slayer statute, N.J.S.A. 3B:7-1.1(a), precludes any type of inheritance to "[a]n individual who is responsible for the intentional killing of the decedent."

a wrongful death claim, counsel indicated, "They may. You know, and that's something that will be decided by a Law Division judge."

The court denied Maria's requests for relief, finding there was no basis for them. It did not dismiss Maria's complaint at that point, and instead appointed a guardian ad litem (GAL) for the children:

> The parties were married at the time of the decedent's death, and that gives [Kriezl] the paramount right to be the administrator and administrator ad prosequendum.
>
> I recognize that the children are children of the marriage. They have a say, and [Kriezl's counsel] convinced me the more he talked the more I needed to have representation of those children because it sounded to me somewhere in there that [Kriezl's] position was going to be that the children weren't entitled to anything under a wrongful death claim. I think they are, and I'm concerned that that claim is not going to be pursued.
>
> All of the allegations of an affair, whether true or not, really just doesn't come into play in the decision on whether or not [Kriezl] should continue as administrator ad prosequendum and administrator of the estate.
>
> The fact of the matter is at the time of his death the decedent was in the care and custody of the hospital and the police department, and I've got to say this is an absolutely tragedy and a heartbreaking situation that should never have occurred. It is absolutely pure speculation that any contact from [Kriezl] to Jason

5

would have changed the outcome here at all. It is pure speculation.

. . .

The claims that there should be some other distribution of the estate, I agree with [Kriezl's counsel] on this, that the estate is never going to go to [Maria]. If there's anything here that would prohibit [Kriezl] from taking under the estate, it goes to the children, and that again is why I'm going to appoint a guardian ad litem and request a report.

After receiving the GAL's report, the court held a status conference. According to the GAL's report, she reviewed the parties' filings, met with Kriezl and the children, and spoke with Maria. The GAL also observed the children's behavior while they played in their home. When she spoke with them about Jason, "[t]hey appeared comfortable enough," but when she mentioned Maria, they "became uncomfortable."

Kriezl told the GAL she was devastated by her loss and Maria's application. She said the children were suffering but were benefiting from therapy, and she was keeping the children "occupied and busy." Kriezl was doing a very good job caring for them, "and her love and worry for them [was] abundantly clear."

Maria could not provide the GAL "with any basis as to why removing Kriezl as administrator [was] in the best interests of the children." She only

6

A-1435-23

advised the GAL that "she would 'make sure the children had money.'" Maria provided what the GAL termed a "closing argument," faulting Kriezl and claiming she was profiting from Jason's death, but showing little concern for the children. The GAL concluded the best interests of the children would be served by leaving Jason's estate in Kriezl's control, and recommended the court limit Maria's contact with the children based on heightened concerns for the children's mental well-being.

After considering the GAL report and arguments from both sides, the court dismissed Maria's complaint with prejudice:

> I don't see that there's a legitimate basis for any claims against [Kriezl], but more concerning to me is that the claims that can be asserted need to be asserted, and there is an administrator ad prosequendum and an administrator of the estate. The appointment of that individual is appropriate, and there's not a legitimate basis to set that aside for the appointment of [Maria]. I think it would be inappropriate at this point.

On appeal, Maria argues she properly plead the Slayer statute and Kriezl should not inherit from Jason's estate, the probate court erred by not considering equitable factors, and the children's interests are not adequately protected under the probate court's order.

A-1435-23

II.

We review a trial court's decision to grant or deny a preliminary injunction following an issuance of an order to show cause for an abuse of discretion. Rinaldo v. RLR Inv., LLC, 387 N.J. Super. 387, 395-96 (App. Div. 2006). A summary proceeding conducted under Rule 4:67 is reviewed under the usual standard of review for a civil case. See O'Connell v. N.J. Mfrs. Ins. Co., 306 N.J. Super. 166, 172-73 (App. Div. 1997) (applying the substantial-credible-evidence standard to credibility determinations in a summary action). "At the conclusion of the [summary] proceedings, the court must make findings of fact." Tractenberg v. Twp. of W. Orange, 416 N.J. Super. 354, 365 (App. Div. 2010).

We apply a deferential standard in reviewing factual findings by a judge. Balducci v. Cige, 240 N.J. 574, 595 (2020). "The general rule is that findings by a trial court are binding on appeal when supported by adequate, substantial, credible evidence." Gnall v. Gnall, 222 N.J. 414, 428 (2015) (citing Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). "Reviewing appellate courts should 'not disturb the factual findings and legal conclusions of the trial judge' unless convinced that those findings and conclusions were 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Griepenburg v. Twp. of Ocean, 220 N.J.

239, 254 (2015) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). "[A] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2010) (quoting Manalapan Realty, L.P. v. Twp. Comm of Manalapan, 140 N.J. 366, 378 (1995)).

"[A] judge sitting in a court of equity has a broad range of discretion to fashion the appropriate remedy in order to vindicate a wrong consistent with principles of fairness, justice, and the law." Graziano v. Grant, 326 N.J. Super. 328, 342 (App. Div. 1999). Review of a trial court's decision regarding application of an equitable doctrine is "limited" and we "will not substitute our judgment for that of the trial judge in the absence of a clear abuse of discretion." N.Y. Mortg. Tr. 2005-3 Mortg.-Backed Notes, U.S. Bank Nat'l Ass'n as Tr. v. Deely, 466 N.J. Super. 387, 397 (App. Div. 2021) (quoting Ocwen Loan Servs., LLC v. Quinn, 450 N.J. Super. 393, 397 (App. Div. 2016)). "An improper exercise of discretion exists only where 'judicial action is arbitrary, fanciful, or unreasonable, or when improper standards, criteria, or procedures are used.'" Todaro v. Cnty. of Union, 392 N.J. Super. 448, 457 (App. Div. 2007) (quoting Evans v. Buchanan, 555 F.2d 373, 378 (3d Cir. 1971)).

Maria first contends the probate court erred by not granting her leeway as a self-represented litigant, and should have recognized she was attempting to invoke the Slayer statute. "[P]ro se litigants are not entitled to greater rights than litigants who are represented by counsel." Ridge at Back Brook, LLC v. Klenert, 437 N.J. Super. 90, 99 (App. Div. 2014). Although "the court system is obliged to protect the procedural rights of all litigants," self-represented litigants are held to the same standard for compliance with our court rules as attorneys. Rubin v. Rubin, 188 N.J. Super. 155, 159 (App. Div. 1982). See Venner v. Allstate, 306 N.J. Super. 106, 110 (App. Div. 1997) ("[S]tatus as a pro se litigant in no way relieves [the litigant] of [the] obligation to comply with . . . court rules.").

While the probate judge did not directly cite the Slayer statute, he nevertheless found Maria's purported contentions under it without merit. The Slayer statute prohibits inheritance of an estate when an individual "is responsible for the intentional killing of the decedent." N.J.S.A. 3B:7-1.1(a). Nowhere in Maria's complaint does she allege Kriezl was legally responsible for the intentional killing of Jason, nor could she. As Kriezl's counsel noted, Kriezl was not under criminal investigation or indictment for Jason's death. While Maria now urges us to expand the Slayer statute to include a suicide she believes

A-1435-23

resulted from marital discord, we decline to do so.  <u>Cf.</u> <u>N.J. Div. of Youth &</u>

<u>Fam. Servs. v. M.W.</u>, 398 N.J. Super. 266 (App. Div. 2008) (declining to apply

the Slayer statute to mother whose cruelty and abandonment led to her son's

death, because the statute requires an intentional killing).

Maria's equitable arguments in which she seeks the establishment of a

constructive trust[3] were not raised before the probate court.  We decline to

consider an issue not properly presented to the trial court unless the jurisdiction

of the court is implicated or the matter concerns an issue of great public

importance.  <u>Nieder v. Royal Indem. Ins. Co.</u>, 62 N.J. 229, 234 (1973) (citation

omitted).  Neither circumstance is present in this matter.

Nevertheless, having reviewed the record, we are satisfied the probate

judge did not abuse his discretion in dismissing the complaint because nothing

in the record supported the establishment of a constructive trust.

---

[3]  A constructive trust "is used to recover property which the holder of the legal
title has no beneficial interest in and either acquired it lawfully but is not using
it for the purposes for which it was given, or acquired it by improper means."
<u>Trs. of Clients' Sec. Fund of the Bar of N.J. v. Yucht</u>, 243 N.J. Super. 97, 131
(Ch. Div. 1989).  Courts have imposed constructive trusts when "the retention
of the property would result in the unjust enrichment of the person retaining it."
<u>See</u> <u>D'Ippolito v. Castoro</u>, 51 N.J. 584, 589 (1968) (quoting <u>Scott on Trusts</u> §
462.2 (3d ed. 1967)).

 A-1435-23

To the extent we have not expressly addressed any issues raised by Maria, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division